CHECKER CAB MANUFACTURING COMPANY, Plaintiff, *v.* HUGH SWEENEY, Defendant.

Supreme Court, New York Special Term, December, 1922.

Injunctions — trade marks — manufacturer of taxicabs may enjoin use of symbol — when actual loss need not be proved — unfair acts — equity.

Plaintiff, a manufacturer of taxicabs, marks them with a distinctive symbol which it has used for more than a year and recently has registered the design as a trade mark under section 367 of the General Business Law. Many of plaintiff's

cabs have been sold to purchasers in the city of New York where they are used for public hire. Defendant operates for hire in the city of New York a taxicab not manufactured by plaintiff but similarly marked. Plaintiff seeks to enjoin defendant from using the taxicab so marked. Defendant opposes the injunction, chiefly on the ground that there is no unfair competition as the plaintiff is the manufacturer and he, the defendant, an operator of a taxicab. *Held*, that where an injury to business, not measured in damages, is threatened by unfair acts, equity may afford relief by injunction; that actual loss need not be proved to have occurred if it is clearly threatened and that where the wrong is clear the defendant's motive and intent are immaterial. Motion for injunction granted.

MOTION for an injunction.

*Abraham M. Grill*, for plaintiff.

*Dooling & Waldman* (*James J. Dooling*, of counsel), for defendant.

MARSH, J. The plaintiff is a manufacturer of taxicabs, having its principal place of business in Chicago. It has sold many of its cabs in New York city, and these cabs are now being operated by the purchasers for public hire in the city streets. The taxicabs manufactured by the plaintiff are known both as "Mogul" and as "Checker" cabs and are marked by the plaintiff with a distinctive symbol in the form of a design or pattern of checkers of contrasting colors arranged both in circles and also in a band running from end to end around the tonneau. This design has been used by the plaintiff for more than a year and has recently been registered by it as a trade mark under section 367 of the General Business Law. The plaintiff claims the design as its trade mark and a distinctive designation of its product.

The defendant is the owner of a taxicab which was not manufactured by the plaintiff, but which is similarly marked and which is being operated for hire in the streets of New York. The defendant has received no license or permission of any kind from the plaintiff, nor does he claim any prior or superior right to the design. The plaintiff now seeks to enjoin him from using the car so marked on the ground that such use is an infringement of its trade mark and a violation of its property rights.

It will be observed that the plaintiff and defendant are not engaged in the same business. The plaintiff is a manufacturer of taxicabs. The defendant is operating taxicabs. The plaintiff sells its product to operators. The defendant hires out his cab for public use. It is on this distinction that the defendant chiefly bases his opposition to the injunction, arguing that there can be no unfair competition where there is no competition of any kind.

I doubt if this is a correct view of the law, however, or that the power of equity is so limited that it cannot protect a manufacturer

against injury resulting from imitations of his product which cause confusion in the minds of the public, even though the confusion arises not in connection with the sale of the article but in the use made of it thereafter. It is true that most of the cases dealing with violations of trade marks and injury to good will have arisen between direct competitors, but that I think is only because the immediate competitor is the most likely person to commit the offense. Unfair competition is but one form of unlawful business injury. Monopolistic practices and illegal strikes and boycotts are familiar examples of business wrongs which equity has power to enjoin. " The controlling question in all cases where the equitable power of courts is invoked is, whether the acts complained of are fair or unfair." *Fisher* v. *Star Co.*, 231 N. Y. 414, 427.

An injunction to protect a trade mark was issued against one who was not an actual competitor in *Colman* v. *Crump*, 70 N. Y. 573. The defendant in that case was engaged in printing imitations of plaintiff's trade mark which, however, were not to be used by himself but by others. In *Upmann* v. *Forester*, 24 Ch. Div. 231, an injunction was issued against an individual in a very different line of business who had imported a large consignment of cigars for his own use bearing an imitation of plaintiffs' trade mark, the court saying " that even if the cigars were given away to friends and relatives and not sold there would be a large distribution, and one calculated to do the plaintiffs material injury, for the persons who smoked the cigars would give the plaintiffs the credit of making an inferior article." The master of a ship fitted up with patented pumps was held liable for an infringement of the patent in *Adair* v. *Young*, 12 Ch. Div. 13, although he had nothing to do with putting the pumps on board. Both of these cases seem to have been decided on common-law principles and not on special statutes. An injunction was granted to a foreign manufacturer against an importer in *Vulcan* v. *Myers*, 139 N. Y. 364. An instructive case is *Corning Glass Works* v. *Corning C. G. Co.*, 197 N. Y. 173, where a manufacturer of glassware, which furnished blanks to glass cutters, sought an injunction against another company of a somewhat similar name which was engaged in the business of manufacturing and selling cut glass. It was found as a fact that the cut glass manufactured by the defendant did not come into direct competition to that manufactured by the plaintiff's customers. It was argued, however, that the similarity of names alone entitled the plaintiff to preventive relief, because of the liability to create unfair trade and the possible confusion in the minds of those transacting business with either corporation to its probable injury. The Court of Appeals said that " if that were

borne out by the facts, doubtless the plaintiff would have a standing in court to protect itself against injury reasonably to be anticipated," but held that the names were not so similar as to produce confusion in view of the fact that the word " Corning " identified no particular business and the two concerns were actually engaged in different lines of trade.   It may perhaps be inferred that if the defendant had taken the precise name or trade mark of the plaintiff an injunction would have been granted.

As a result of the authorities which have been cited, as well as the more common unfair competition cases, I think it may be said to be the law that where an injury to business, not measurable in damages, is threatened by unfair acts, equity may afford relief by injunction.   Both injury and wrongful acts, of course, are essential elements of the cause of action.   The defendant claims in the present case that the plaintiff is not being injured, as there is no proof that its sales have been affected; that there has been no confusion, and that there is likely to be no confusion in the minds of any purchasers of taxicabs, and any confusion that may exist at all is in the minds of the riding public.   Moreover, it may be said that the defendant has no intent to injure the plaintiff or to compete with it in any way, his sole concern being with his business as a taxicab operator.   It is not difficult to perceive, however, that if imitations of the plaintiff's cabs may be used without restraint, the plaintiff's market is bound to suffer.   Actual loss need not be proved to have already occurred if it is clearly threatened (*Vulcan* v. *Myers, supra*), and when the wrong is clear the defendant's motive and intent are immaterial.   Id.   The papers submitted leave no room for doubt that the defendant intentionally copied plaintiff's marking, and, even though his specific intent in so doing was not to compete with or injure the plaintiff, he undeniably had in mind the advantages of using that design in competition with the operators who had purchased plaintiff's cabs.   Of course the plaintiff may not maintain the action for the protection of its customers.   *Corning Glass Works* v. *Corning C. G. Co., supra.*   But the defendant, in the language of Pitney, J., in *Internat. News Serv.* v. *Asso. Press*, 248 U. S. 215, 239, was " endeavoring to reap where it had not sown " and is in no position to plead innocence if innocence were a defense.

The further claim that the plaintiff acquired its trade mark through some wrong to the originators of the design in Chicago creates no defense in this state, where the trade mark has been registered and use and priority are clearly established.   As to the suggestion that the plaintiff does not come into court with clean hands because of the alleged fraud upon the public, arising out of the

relationship of the plaintiff's customers to the Mogul Taxicab Corporation, Inc., there is insufficient proof to connect the plaintiff with the plan of operation, assuming that any fraud exists. Motion for injunction granted.

Ordered accordingly.