STANDARD OIL CO. OF MAINE, Inc., v. STANDARD OIL CO. OF NEW YORK.

No. 2477.

Circuit Court of Appeals, First Circuit.

Nov. 26, 1930.

Carl C. Jones, of Portland, Me. (Bradley, Linnell & Jones, of Portland, Me., on the brief), for appellant.

Nathan W. Thompson, of Portland, Me. (Woodman, Skelton & Thompson, of Portland, Me., on the brief), for appellee.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

WILSON, Circuit Judge.

A bill in equity to restrain the appellant from using the corporate name, the Standard Oil Company of Maine, Inc., or any corporate name that includes the words "Standard," "Standard Oil," or "Standard Oil Company," in such a manner as to cause confusion and uncertainty in the public mind as to the quality or character of the goods sold by the appellant in distinction from those of the appellee.

The bill, while grounded on the principles of unfair competition, is in the nature of a bill quia timet; that is, to restrain impending or threatened injury, and not a bill to restrain actual unfair competition, a distinction important to bear in mind in analyzing the decided cases.

The appellee is a corporation well known to the public as dealing in petroleum products for use in internal combustion engines, for lubrication and for heating purposes, and has built up a reputation in New York and the New England States for the quality and uniformity of its products in its line of business.

The appellant has recently been organized in the state of Maine to deal in petroleum products, including gasoline, and to do various other kinds of business, some of which are associated, directly or indirectly, with petroleum products.

Before it has actually begun to do business, the appellee brings this bill to restrain it from using the corporate name it has adopted or any similar name in such a manner as would confuse it in the public mind with that of the appellee.

The court below, 38 F.(2d) 677, granted an injunction restraining the appellant from using the name "The Standard Oil Company of Maine," or any corporate name containing the words "Standard," "Standard Oil," or any similar name or any variations thereof, so closely similar in sound or appearance to the corporate name of the complainant as to lead to uncertainty or confusion in the use thereof.

The appellant contends: (1) That it is entitled to use of its name; (2) that it should be permitted to sell products under that name, at least in territory not covered by the appellee, or to sell goods not sold by the appellee; (3) that there has been no unfair competition, for the reason that the appellant has never done any business, and hence the bill is prematurely brought.

The appellee is not relying on its rights from having registered the word "Standard" as a trade-mark under the statutes of Maine, but on the broader ground that the words "Standard," "Standard Oil," and "Standard Oil Company" have acquired a secondary meaning in the petroleum products trade, and that the narrower rule as to trade-marks does not apply. Nims on Unfair Competition, § 57; Richmond Remedies Co. v. Dr. Miles Medical Co. (C. C. A.) 16 F.(2d) 598, 602.

■ The court below found, and we think correctly, upon the record that the words "Standard Oil" and "Standard Oil Company" and the word "Standard," when used in connection with petroleum products, have acquired a secondary meaning, and to the public mind guarantee a high grade and uniform quality of petroleum products, and that the appellee has thereby acquired a right thereto, and is entitled to be protected against unfair or fraudulent use thereof in competition with it. It is too obvious to require proof that to permit the appellant, under the corporate name it has selected, to do business in petroleum products in the same territory as the appellee, would necessarily result in confusion, and in what the courts in numerous cases have held to be unfair competition.

As to whether the appellee should be protected against the possible future use of it in other territory, or in the sale of other products not associated with the petroleum trade, may not on the record be so clear as to warrant an injunction against its use in other territory, or in connection with the sale of other products.

That confusion may arise, however, even in such instances, to the damage of the party first adopting the name is not impossible, as was held in Armour & Co. v. Master Tire & Rubber Co. (D. C.) 34 F.(2d) 201; Akron-Overland Tire Co. v. Willys-Overland Co. (C. C. A.) 273 F. 674.

The main defense relied on by the appellant is that the bill is premature; that injunction will not issue to restrain unfair competition until competition actually exists. Unfair competition, it is urged, is the "pass-ing off" of one's goods as those of another, and therefore, to constitute unfair competition, there must be actual competition, which has not taken place in this instance.

But this misconceives the nature of these proceedings, which are in the nature of a bill quia timet. The cases in which the courts have said: "There must be actual unfair competition," and that unfair competition consists in "passing off" one's own goods as those of another, have no application to the facts of this case. This is well illustrated in the Borden Condensed Milk Case (C. C. A.) 201 F. 510, 515, relied on by the appellant, and from which counsel for the appellant in his brief quotes as follows: "If it bases its right to an injunction upon the doctrine of unfair competition, no competition of any kind has been shown by the record. If it relies upon some supposed damage which may result from appellants' use of the name 'Borden' in connection with inferior goods, the action is premature, because the appellants, as yet, have neither sold nor made anything."

The other cases cited by the appellant to the same effect, it will be found upon examination, are to be differentiated and are not applicable to the facts of the instant case. In the Borden Case it was held that the sale of ice cream in no way competed with the sale of condensed milk, hence the bill could not be maintained in any event, as the complainant was not in the ice cream business. It was in view of this situation that the court said to sustain such a bill there must be competition; and, while it further added that, if the complainant relied on supposed damage which may result from the use of the name "Borden," the action was premature, the ground for holding the action premature was that it did not then appear that the use of the name "Borden" in connection with ice cream would result in unfair competition in the future, since the complainant was not then in the ice cream business, and might never engage in it, and that to base an injunction on what might result in the future "on speculation and remote contingencies" was not sufficient to warrant the use of the extraordinary remedy of a writ of injunction.

■ That, however, is not the appellant's case. We apprehend that the appellant, if it were now actually engaged in the business of selling gasoline or petroleum product in the appellee's territory, would not really seriously contend that it could defend on the ground that no confusion would thereby result, and that it could not properly be enjoined from conducting, under such a name

as it has selected, the business of dealing in petroleum products in such territory. It now merely says: "You have not yet been injured. Nothing has been done except the organization of a corporation." This defense loses sight of the fact that one of the important functions of a court of equity is to prevent injury from a wrongful act before it occurs, whenever it appears to be imminent and that irreparable injury would result.

The power of the equity court to interfere and prevent injury by injunction in such a case is too well settled to require citation of authorities. High on Injunctions (2d Ed.) vol. 1, § 18; Vicksburg Waterworks Co. v. Vicksburg, 185 U. S. 65, 82, 22 S. Ct. 585, 46 L. Ed. 808. Pomeroy in his work on Equitable Remedies (2d Ed.) (see volume 5, Pomeroy's Equity Jurisprudence, § 1965), in defining what constitutes threatened injury, says: "The character of the threatened injury which will justify an injunction is simply that which would support an injunction on any ground, if it were already being done."

The only questions here are whether this salutary remedy can be properly applied to threatened unfair competition, and whether, in this case, the necessary degree of imminence exists. We can conceive of no reason why this protection should not be afforded against unfair competition, if imminent, as well as against other threatened injuries. On the contrary, there are compelling reasons why it should be so applied, whenever it appears that, if put into practice, the proposed course of a defendant would result in unfair competition, since there is no damage more difficult of full and complete measurement and compensation than injuries of this nature.

The law of unfair competition in trade is of comparatively recent origin and growth, Nims on Unfair Competition, § 2; but it has been and is being extended to cover all instances of fraudulent interference with another business. Courts of equity are extending the principles of equity to enjoin unfair competition in all its phases. There can be no good reason why it should not exercise its power to prevent threatened unfair competition before it is put into effect any more than any other species of unlawful acts from which irreparable damage may result.

And again, under section 365, Nims says: "Injunctions will be granted to prevent threatened acts of unfair competition. It is not necessary to wait until a name that tends to mislead the public and is likely to be used for that purpose, actually is used in the business of the defendant. Equity favors him who in such a case acts promptly and before rights or equities (such as those of innocent purchasers of defendant's stock) have attached."

The following cases also sustain the application of the rule to unfair competition, if authorities are needed to sustain what is obviously a proper application of this well-established rule of equity:

Edison Storage Battery Co. et al. v. Edison Automobile Co. et al., 67 N. J. Eq. 44, 53, 56 A. 861, 864: "It is further urged that complainant should not file his bill or obtain any restraint because it does not yet appear that any wrong has been done, or that there is danger that it will be done in the near future to the injury of the complainant. But the complete answer to this is that, in order to protect his rights to the use of his name, the complainant must act promptly, and before the rights of any innocent third parties, who may have purchased stock in the defendants' corporation, may become involved. In this particular class of cases, involving the right to use a name, prompt action is always required."

United Drug Co. v. Parodney (D. C.) 24 F.(2d) 577, 579: "A court of equity need not wait for the appropriation to actually take place, such as a court of law must do, if it plainly and clearly appears that such wrongful appropriation is extremely probable and plainly likely to take place. A court of equity, so to speak, can 'lock the stable door before the horse is stolen.' Of course, it should only so interfere where a clear case is shown. Business should not be unduly interfered with because of extravagant claims or mere fears and suspicions."

National Picture Theatres, Inc., v. Foundation Film Corporation (C. C. A.) 266 F. 208. Here neither party had produced the film, but the complainant had first appropriated the title of "The Blindness of Youth." The court said, while "there must be a real present or prospective competition [and in this instance it was prospective], that is, an endeavor to get the same trade from the same people at the same time; and that endeavor must on the defendant's part be unfair, that is, with a wrongful intent to 'gain the advantages of that celebrity' * * * of which plaintiff is the owner; but such intent, though it must be deemed to exist in fact, may be inferred from the inevitable consequences of the act complained of."

The case of Cleveland Opera Co. v. Cleve-

land Civic Opera Ass'n, 22 Ohio App. 400, 154 N. E. 352, 355, is a case comparable to the case at bar. "It is contended," said the Ohio Appellate Court in the Cleveland Opera Co. Case, "that no act has been done which can be interpreted into unfair competition, because it has done nothing but file its articles of incorporation and receive a certificate therefor. There has been neither organization by the stockholders nor the election or creation of a board of directors, nor has there been an election of officers, and, further, there has been no attempt in any manner to transact business. From these facts it is claimed that no act of unfair competition can follow.

"However, this is a case in equity, and one of the vital principles thereof is that equity aids the vigilant. Under the record the plaintiff has been doing business with the public under its charter for some four years, not only in its own locality, but in other places throughout the country. Instead of waiting for positive and overt acts on the part of the defendant before proceeding, it acted under the principle of equity just mentioned and applied to the courts for injunctive relief, and at a juncture when no injury can arise to the defendant if the relief be granted except the amendment, upon application, of its name, to eliminate the similarity complained of."

In the case of Philadelphia Trust S. D. & I. Co. v. Philadelphia Trust Co. (C. C.) 123 F. 534, the defense was that the defendant had not yet begun business. However, it was ordered to change its name, which was like that under which the complainant was usually known by the public, though not the complainant's full name.

The English court, to which the American courts have frequently resorted for authority in the early development of the law of trademarks and unfair competition (see McLean v. Fleming, 96 U. S. 245, 251, 24 L. Ed. 828), said in Ewing v. Buttercup Margarine Company, Ltd., 1917–2 Ch. D. 1, 11 (Lord Cozens-Hardy): "I cannot bring myself to doubt that what the defendants are threatening and intending to do would affect, and in all probability seriously affect, the plaintiff's business. *We can only prophesy, because the action was commenced before the defendants' business was begun,* but I cannot bring myself to doubt that serious damage to the credit and prosperity of the plaintiff's business would arise from the confusion caused by the defendant company deliberately and wilfully continuing to carry on business in a name so nearly resembling that under which the plaintiff is trading as to be calculated to deceive." (Italics ours.)

Other cases where the same principle is applied may be found in Dayton v. Imperial Sales & Parts Co., 195 Mich. 397, 404, 161 N. W. 958; Checker Cab Mfg. Corp. v. Sweeney, 119 Misc. Rep. 780, 197 N. Y. S. 284; Taendsticksfabriks Aktiebolagat Vulcan v. Myers, 139 N. Y. 364, 34 N. E. 904; Metropolitan Tel. & Tel. Co. v. Metropolitan Tel. & Tel. Co., 156 App. Div. 577, 141 N. Y. S. 598; Material M. M. Ass'n v. New York Material M. M. Ass'n, 169 App. Div. 843, 155 N. Y. S. 706, 711, which only in part exhausts the list.

In not all of the cases cited, it is true, was action brought before the defendant was engaged in any business, but the principle has been so broadly stated as to show that the courts will apply it in all cases of threatened unfair competition whenever properly invoked.

The only question left is, Was this extraordinary remedy properly invoked in this case? That unfair competition is imminent in this instance is sufficiently, and we think clearly, indicated by the proof and the admitted facts. Certain promoters have not only organized a corporation in Maine, which by its name and certificate of incorporation indicates that its main purpose is to deal in gasoline and other petroleum products, but they have selected a corporate name so nearly resembling that of the appellee as to indicate beyond peradventure that they intend, if permitted, to avail themselves of the benefit of the reputation of the appellee for dealing in high-grade petroleum products which the appellee has built up over a period of years in the territory it serves, and in which the appellant is also authorized to do business. Not only have the same promoters organized a corporation in Maine with a name similar to that of the appellant, but have organized other corporations with a similar name in five or six other states where corporations under the name of the Standard Oil Company are now doing business. Such acts cannot be brushed aside as without significance, or as mere idle gestures. It clearly shows a premeditated plan with a definite object in mind of immediate action, and with but an obvious and sinister purpose in view.

The court below having found, what seems indubitable, that to permit the appellant to engage in the business of dealing in gasoline and other petroleum products in the appellee's territory would violate the fundamental

principles of fair competition, viz. the selling of one's goods, not on their own merits, but by masquerading them under the name of a well-known competitor, the acts of the promoters of the appellant corporation above set forth we think clearly warranted the court below in finding that there was sufficient ground for interference by a court of equity by reason of imminent and irreparable injury.

From information supplied by certified copies of decisions of the District Court in the other states where the promoters have organized other similar corporations, it appears that the District Court of Maine is not alone in the view it took of this case. After hearings in Rhode Island, Virginia, and New Mexico, injunctions have been issued. In the other states where similar corporations have been organized by these promoters, it is agreed by counsel that at least temporary injunctions have been issued without a contest.

That other corporations under the name of Standard Oil Company with the name of a state affixed, which in 1899, because a part of an illegal combination with the Standard Oil Company of New Jersey, and which again became separate units by dissolution in 1911, United States v. Standard Oil Co. of New Jersey et al. (C. C.) 173 F. 177; Standard Oil Co. of New Jersey et al. v. United States, 221 U. S. 1, 31 S. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734, are doing business in other territory than that of the appellee and by agreement, or because of the rule of equity here invoked, do not compete in each other's territory under the name of Standard Oil Company, does not ipso facto deprive this appellee of the right to be protected in the territory it serves from unfair competition. There is no evidence in the case that any one of the corporations formerly controlled by the Standard Oil Company of New Jersey is now violating any of the statutes of the United States, or the decree of court made in 1911; or that the appellee has done any wrong in any way connected with the acts of which it complains on the part of the appellant. United States Light & Heating Co. of Maine v. United States Light & Heating Co. of New York et al. (C. C.) 181 F. 182. Since it does not appear that any action has been taken by the government against it on the ground that the appellee and the other corporations of similar name are not now complying with the law or the decree of court, the presumption to the contrary is without evidence to refute it.

The suggestion in oral argument that the appellee does not come into court with clean hands, therefore, is not sustained on the record. The situation, however, may have some bearing on the extent of the injunction that should be issued in this case.

There does not appear to be clear proof of impending inimical competition by the appellant as against the appellee in any territory other than that in which the appellee is now engaged. At least it does not appear to be so imminent as to other territory, or so clear that injury to the appellee will result therefrom, as to warrant so broad an injunction as was issued by the court below. We do not think this court at present is called upon to protect the appellee in other territory than that now served by it against competition by the appellant under the name of the Standard Oil Company of Maine, when there are so many other companies with similar names which may also enter into any field not now served by the appellee. We are of the opinion, therefore, on the record before us that the injunction should be modified and the appellant, its officers, agents, servants and attorneys, be enjoined from dealing in gasoline, petroleum, or any allied products and transacting any business in connection therewith within the state of New York, the New England States, or in any foreign country in which the appellee is now operating. The equity court will still be open to any litigant to obtain relief against unfair competition, either actual or when clearly imminent.

The case is remanded to the District Court, with directions to modify the decree in conformity with this opinion, and, thus modified, is affirmed; the appellant recovers costs of appeal.

ANDERSON, Circuit Judge, concurs in the result.