**LAYNE–WESTERN COMPANY,**
Plaintiff,

v.

**Vene D. FRY, d/b/a Vene D. Fry Company, Defendant.**

No. 10911.

United States District Court
W. D. Missouri, W. D.

June 26, 1959.

---

Caldwell, Eastin, Blackwell & Oliver, Kansas City, Mo., for plaintiff.

Watson, Ess, Marshall & Enggas, Kansas City, Mo., for defendant.

R. JASPER SMITH, District Judge.

This is an action for unfair competition in which plaintiff seeks to enjoin defendant from using the name "Layne" or "Layne & Bowler" in connection with the selling or servicing of vertical turbine pumps in the area of plaintiff's sales operations. Defendant, by counterclaim, seeks to enjoin plaintiff from issuing disparaging or defamatory statements concerning the product defendant sells. Both parties are in the business of selling and servicing vertical turbine pumps, plaintiff as the sales affiliate of Layne & Bowler, Inc., of Memphis, Tennessee, and defendant as a manufacturer's representative for Layne & Bowler Pump Company of Los Angeles, Cali-

fornia. Neither party is engaged in manufacturing.

The primary progenitor of this dispute was an inventive man named Mahlon E. Layne. In 1902, after some experience as a well driller in the Middle West, he sold his business, and with an engineer named O. P. Woodburn, moved to Houston, Texas. There he met P. D. Bowler. These three men went into business, manufacturing and selling vertical turbine pumps and other associated equipment. In 1907 this business was incorporated as a Texas corporation under the name of Layne & Bowler Company. In 1908 or 1909 Bowler moved to California and started manufacturing and selling pumps and equipment in that area. The west coast enterprise was incorporated as a California corporation in 1912 with a corporate name of Layne & Bowler Corporation. Bowler was the predominant stockholder in this corporation with Layne owning a small interest.

In 1913 Layne & Bowler Company, the Texas corporation, opened a factory in Memphis, Tennessee. In 1916 Layne moved to California and purchased all of Bowler's interest in the west coast corporation. This made him holder of a majority interest in that organization, Layne & Bowler Corporation, as well as sole shareholder in Layne & Bowler Company. In the early 1920's the Layne & Bowler Company began to organize a group of affiliated corporations. These were sales organizations, each of which was designed to drill wells and to sell and service its pumps in a definite assigned territory. Each of these sales affiliates used the name "Layne" as part of its corporate name, followed by a geographical word designating the particular company's territory, such as "Layne-Texas", "Layne-Central" and "Layne-Western", plaintiff here. Layne-Western was incorporated in 1924. Since that date it has been a sales affiliate of the Layne & Bowler Company or its successors with its headquarters in Kansas City, Missouri.

In 1923 Mahlon Layne started to distribute his interests in two manufacturing corporations. He had three sons. It is not necessary here to delineate the complete history of property transfer and corporate reorganizations which took place over a twenty-five year period. Suffice it to say that the interest in the midwestern enterprise, Layne & Bowler Company, was passed in 1923 to his sons while the controlling interest in the west coast corporation, Layne & Bowler Corporation, was given in 1927 to a philanthropic foundation established in Layne's name. Since the time when Layne transferred substantially all his interest in Layne & Bowler Company to his sons, the two corporations have not been under single ownership or control.

As part of the gift to his sons a series of contracts were entered into between Layne, his sons, Layne & Bowler Company and Layne & Bowler Corporation. Among other things these arrangements contained provisions which allocated territory between the two corporations and provided for cross-licensing of existing and future patents. Layne & Bowler Corporation was allocated the territory of the Western states of California, Oregon, Washington, Nevada, Arizona and Utah. Later Idaho, New Mexico, and that part of the State of Texas lying west of the 103rd meridian were added. Layne & Bowler Company retained the remainder of the country as its exclusive territory. There were subsequent amendments to the original contract, largely caused by a rearrangement of interests among the sons. Other than as stated above, these did not affect the territorial distribution originally established. For present purposes it may be stated that the Layne & Bowler Company has been succeeded eventually, through reorganization, by Layne & Bowler, Incorporated, of Memphis, Tennessee. The two manufacturing companies, in their respective spheres, engaged in substantially the same business. Layne-Western, as a sales affiliate of the Memphis corporation, has operated pursuant to the agreements, and the states of Missouri and Kansas have always been a part of the exclusive territory assigned

to it under the contract and subsequent amendments.

In 1947 all the remaining stock of the Layne & Bowler Corporation of California was sold to persons outside the original families, and since that time there has been no community of interests between the Memphis and Los Angeles corporations. In 1954 the name of the Los Angeles corporation was changed from Layne & Bowler Corporation to Layne & Bowler Pump Company.

As a result of the contracts executed in 1923 with respect to cross-licensing of patents and division of territory, the pump manufacturing business at Memphis and the pump manufacturing business at Los Angeles were bound not to compete. They were confined to their respective territories, and in general these agreements were observed until 1948. After 1948, the territory and cross-licensing agreements were considered by the parties as having been terminated. No claim is made that they are in existence with valid effect at the present time.

In September, 1955, defendant became manufacturer's representative at Kansas City for Layne & Bowler Pump Company. This was the first time since plaintiff was organized that the Los Angeles corporation had had a sales representative in the area. Defendant's territory varies depending upon the type of pump sold, but it includes parts of Missouri and Kansas. In addition, defendant is paid commissions for certain engineering assistance to Kansas City consulting engineers on their projects involving vertical turbine pumps wherever located in the United States.

Plaintiff, in the course of its business as an affiliate, sells vertical turbine pumps purchased from the Memphis corporation and distributes the pumps in connection with contracts under which plaintiff is required to drill wells and supply pumps. In the course of its business of selling and distributing pumps, it does not act as agent for the Memphis corporation.

In general, vertical turbine pumps are sold for municipal water supply, irrigation and miscellaneous industrial purposes not confined to the supply and pumping of water. During the time defendant has represented the Los Angeles corporation, plaintiff's sales in defendant's basic territory can be statistically broken down according to use, with municipal sales approximately forty-five per cent, industrial sales approximately forty-five per cent, and irrigation sales approximately ten per cent.

Pumps of the character manufactured by both the Memphis corporation and the Los Angeles corporation are not considered stock items, but are assembled upon receipt of a particular order secured by plaintiff or by defendant. Quite frequently, particularly in the case of pumps for municipal or industrial use, the judgment of professional engineers is involved. Cities frequently employ consulting engineers who prepare specifications for pumps required, and in some instances industrial users do also. In cases where a consulting engineer is not employed the cities' or the industries' own engineering departments may prepare specifications. In some instances both cities and industries purchase pumps or service without the use of professional engineers. In irrigation purchases, the use of consulting engineers is not frequent.

Specifications ordinarily do not require pumps of any particular manufacturer, although the specifications may name two or three manufacturers, adding the words "or approved equal." Normally the specifications will refer in considerable detail to the kind, design and quality of the pumps and the performance required.

Beginning at the time of its organization in 1924, plaintiff has established a profitable business which enjoys a good reputation and a valuable goodwill within its territory. In connection with the extensive advertising, promotion and sale of its pumps, plaintiff has at all times used the names "Layne" and

"Layne & Bowler", as well as its corporate name, "Layne-Western Company." As a result, those names have acquired a secondary meaning, which links them to the high quality of pumps and pump service offered by plaintiff and to the wide-spread and favorable reputation of plaintiff's business. The evidence is quite clear that in plaintiff's trade territory the names "Layne" and "Layne & Bowler" identify plaintiff and the pumps which plaintiff sells, and are an integral part of plaintiff's business.

Until 1955, the California company had no representative in plaintiff's area of operations. Plaintiff during the entire period of its existence was the only vendor of a pump in its trade territory with which the words "Layne & Bowler" were in any way associated. Since that time defendant has engaged in the business of offering for sale, for the California company, its vertical turbine pumps. In so doing he has advised prospective customers that his pumps are manufactured by Layne & Bowler Pump Company, and has disseminated advertising literature and catalogs on which the name of Layne & Bowler Pump Company has appeared.

Prior to 1955, the Los Angeles corporation referred to its products as "Layne & Bowler Pumps". In 1955, however, it adopted a registered trademark "Verti-Line". It now emphasizes that trademark in connection with its pumps. The Memphis corporation has emphasized the word "Layne" both in block letters and in script, but the corporate name "Layne & Bowler, Inc." or "Layne & Bowler, Memphis" was used on all its products, either by name plate or by casting the names into the pump head.

Defendant's advertising consists of handing out, on personal calls, detailed catalogs supported by an occasional mailing of circulars by the Los Angeles corporation. Defendant does no direct mail advertising as such. Plaintiff's advertising consists of direct mail and personal distribution of various pamphlets and circulars prepared by plaintiff or the Memphis corporation. Plaintiff's own advertising material has featured the word "Layne" and plaintiff's own corporate name, and it has never featured its product as "Layne & Bowler" pumps. The words "Layne & Bowler" appear only in testimonial letters incorporated in certain of plaintiff's advertising circulars. In general plaintiff has identified itself by its full corporate name, Layne-Western Company, as a dealer in "Layne" pumps.

The evidence shows that the public generally, as represented by consulting engineers, water superintendents and others commonly interested in vertical turbine pumps, have neither accepted nor identified the registered trademarks of either of the companies, but refer to them generally as "Layne" or "Layne & Bowler" pumps. Quite commonly, when references are made by customers or prospective customers of the Memphis company or of plaintiff, the description is to "Layne & Bowler" pumps.

It should be emphasized that vertical turbine pumps generally are expensive items of equipment, ranging in price from about $1,000 to $100,000 each, with an average price from $2,500 to $3,000. Since they are complicated pieces of equipment and in ordinary course are prepared on the basis of plans and specifications for a specific use, trained men of one kind or another are usually involved in their selection. If consulting engineers are not used, a prospective purchaser's own engineering staff may make the recommendations. Or, where no engineer is available, the engineering staff of plaintiff or defendant is utilized. This is true even in cases where competitive bidding is encountered. Bids are made and considered on an evaluation basis, taking into account not only the price of the equipment but the cost of operation over a period of some years. Bids on an evaluated basis are accompanied with a guarantee by the proposed seller that the efficiency of the equipment, if purchased, will be as represented.

Under these circumstances, to a substantial degree, sales efforts by both plaintiff and defendant involve personal

contact with consulting engineers and potential users. Defendant has concentrated his prospective sales activity upon personal contacts with various consulting engineering firms. In most instances he has explained the lack of connection between the Memphis and Los Angeles corporations and their products. The same explanation has been made by plaintiff, and by both the manufacturing corporations involved. There is no evidence of deliberate "palming off", or any attempts in that direction; and no evidence of other deliberate unethical business practices.

It is clear that a certain confusion has occurred, although at the time of trial only two instances of sales were shown to have been made by defendant in plaintiff's territory. The most common incident of confusion appears in the assumption on the part of consulting engineers and others that the Los Angeles corporation is simply a west coast branch of the Memphis corporation's operations. Time after time it has been necessary for plaintiff or defendant to explain this assumption. In certain cases where both companies were bidding on different projects confusion has resulted on the part of bidding authorities. In at least one situation an award was contemplated for the Los Angeles company's product until it was explained that there was no connection between the two companies and plaintiff's company presumably was better equipped for servicing. And technical data distributed by defendant on Layne & Bowler Pump Company, for application to the latter's pump, have been misapplied to plaintiff's pumps or otherwise mistaken for material distributed by plaintiff or its manufacturer.

In spite of the emphasis placed by both parties on the trade names, "Layne" and "Verti-Line", the practice is wide-spread among engineers, purchasing agents and others to consider pumps only from the standpoint of the manufacturer. It is apparent that the identity of the manufacturer is of considerable importance in this field. Notwithstanding the efforts made to distinguish them, it has been generally understood that the term "Layne & Bowler" refers to the Memphis corporation in the trade territory in question here, or refers to plaintiff as the sales representative.

It must be noted that this case varies somewhat from the normal unfair competition proceedings in that neither plaintiff nor defendant is the manufacturer of the products being sold, and neither of them is engaged in selling a commodity in the mass production field.

■■ Plaintiff Layne-Western Company, as exclusive sales representative for Layne & Bowler, Inc., of Memphis, has devoted some thirty-four years to building a business around the "Layne & Bowler" name. As a result of plaintiff's efforts, the words "Layne & Bowler Pumps" and "Layne Pumps" have come to mean pumps offered for sale by Layne-Western Company in its territory. Because the tendency of defendant's action in offering for sale pumps manufactured by "Layne & Bowler Pump Company" is to deceive an appreciable number of people as to the origin of defendant's goods, plaintiff has established a cause of action for unfair competition. A proper remedy is an injunction against any use by defendant of the "Layne" and "Layne & Bowler" name in plaintiff's operating area, whether as a part of the corporate name of his principal or otherwise. The right of a business to protect its reputation and good will from unfair competition in the community in which it lives by the competitive use of a confusingly similar name is an established principle of law. Cases analogous to the problem here, which have recognized the existence of this right are United Drug Co. v. Theodore Rectanus Co., 1918, 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141; Hanover Star Milling Company v. Metcalf, 1916, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713; Esso, Inc. v. Standard Oil Co., 8 Cir., 1938, 98 F.2d 1; Tillman & Bendel, Inc. v. California Packing Corporation, 9 Cir., 1953, 63 F.2d 498, certiorari denied, 1953, 290 U.S. 638, 54 S.Ct. 55, 63, 78 L.Ed. 554.

█ The real question is whether the names are confusingly similar, and create a likelihood of confusion. A showing of actual confusion is not necessary, and is merely evidence of the likelihood of confusion, which is the ultimate fact to be determined. 2 Nims, Unfair Competition and Trademarks, Section 320, p. 1018; Cleo Syrup Corporation v. Coca-Cola Co., 8 Cir., 1944, 139 F.2d 416, 150 A.L.R. 1056, certiorari denied, 1944, 321 U.S. 781, 64 S.Ct. 638, 88 L.Ed. 1074; Vogue Co. v. Thompson-Hudson Co., 6 Cir., 1924, 300 F. 509, certiorari denied, 1926, 273 U.S. 706, 47 S.Ct. 98, 71 L.Ed. 850.

█ While actual "palming off" is the most striking evidence of likelihood of confusion, there are other ways in which plaintiff can sustain injury because of the similarity of the names. For example, plaintiff's municipal customers frequently employ consulting engineers, although often they do not. More than half of plaintiff's sales of pumps are to industrial and agricultural or irrigation customers who rarely use consulting engineers. Thus while the class of customers for vertical turbine pumps to some degree does involve a specialized field, it is not completely limited to members of a knowledgeable group. And the evidence is clear that the fact that a consulting engineer may be a pump expert does not render him immune to confusion. A number of consulting engineers testified as to the opportunities for direct losses of sales due to confusion between plaintiff and defendant. Where the necessary result of using a confusingly similar name is in fact to trade on another's reputation or good will, even though no deliberate trading is intended, the act may constitute unfair competition. See Champion Spark Plug Co. v. Sanders, 1947, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386; Hanson v. Triangle Publications, 8 Cir., 1947, 163 F.2d 74, certiorari denied, 1948, 322 U.S. 855, 68 S.Ct. 387, 92 L.Ed. 424; Florence Mfg. Co. v. J. C. Dowd & Co., 2 Cir., 1940, 178 F. 73.

█ It is a logical conclusion under the record as it appears here that defendant is literally borrowing plaintiff's reputation by using the "Layne & Bowler" name. And to that extent, plaintiff is entitled to protection. See Adolph Kaster & Bros., Inc. v. Federal Trade Commission, 2 Cir., 1943, 138 F.2d 824.

█ While it is entirely true that in determining likelihood of confusion in a given situation, account should be taken of the cost of the product involved, the special characteristics of the purchasers if the products are sold to a limited class, and whether the products are specially constructed and sold upon competitive bidding or personal contact, this does not mean that there cannot be confusing similarity of names in cases where these factors are considered. And it does not mean that under appropriate circumstances one who has built a business around a particular name is powerless to prevent a competitor from using the same or a confusingly similar name because of the nature of the business and the commodity generally. See Lincoln Motor Co. v. Lincoln Automobile Co., D. C.N.D.Ill.1930, 44 F.2d 812; Atlas Diesel Engine Corporation v. Atlas Diesel School, D.C.E.D.Mo.1949, 60 F.Supp. 429.

█ It occurs to me that in the final analysis the greatest single block of authority upholding plaintiff's right to protection may be found in the group of cases centering around the various Standard Oil Companies and their rights to certain names in certain territories. To some extent at least this case is directly similar. Here two companies once associated in a degree, agreed among themselves (with doubtful legality) on a voluntary division of territory. That division of territory was respected, and plaintiff acquired substantial rights in the protection of its business. Under those circumstances, when one company comes into the territory of the other and proceeds to compete with the other or with a company affiliated with it, we are justified in concluding that deception will

be the probable result of defendant's act, and that is sufficient to establish a case of unfair competition. See Standard Oil Company of New Mexico v. Standard Oil Company of California, 10 Cir., 1932, 56 F.2d 973; Standard Oil Company of Maine v. Standard Oil Co. of New York, 1 Cir., 1930, 45 F.2d 309; Standard Oil Company v. Michie, D.C.E.D.Mo.1929, 34 F.2d 802.

 Concededly, in its own trade territory, the Los Angeles corporation would have the right to use any of the words or names defendant is now using. However, we are faced with the premise that "a name legitimate in one territory may generate confusion when carried into another and must then be given up." See Federal Trade Commission v. Algoma Lumber Co., 1933, 291 U.S. 67, 54 S.Ct. 315, 78 L.Ed. 655. In this situation, by reason of their long use in connection with the business and trade of plaintiff, the words and names in controversy have come to be understood by the public in Missouri and Kansas as designating the goods and products of plaintiff and of plaintiff's supplier. Defendant, being subsequent in time in the territory mentioned, is not entitled to use these terms or names because to do so would cause its goods and products to be known in the market of those states as those of plaintiff. See Esso, Inc. v. Standard Oil Company, supra.

It follows, therefore, that within the territory served by plaintiff, defendant will not be permitted to make any use of the "Layne" or "Layne & Bowler" name, and should be prohibited from using the name "Layne & Bowler Pump Company" in any manner in connection with the sale of vertical turbine pumps or other water supply equipment, or from identifying the manufacturer of the pumps offered for sale by him as "Layne & Bowler Pump Company", or from otherwise using in any way the names "Layne & Bowler" and "Layne".

 Defendant seeks to charge plaintiff with guilt of conduct which bars it from seeking equitable relief. This conduct has to do with certain pump comparison material that plaintiff obtained from its supplier, Layne & Bowler, Inc., of Memphis. Circulation given the material was inconsequential. While there may have been technical irregularities in the material, it did not impress me as being of major consequence. A defense of this kind requires unconscionable or morally reprehensible conduct. See Shinsaku Nagano v. McGrath, 7 Cir., 1951, 187 F.2d 753. And the defense is reluctantly applied and is always scrutinized with a very critical eye. Farmers Educational & Cooperative Union of America v. Farmers Educational & Cooperative Union, D.C.S.D.Iowa 1956, 141 F.Supp. 820, affirmed Iowa Farmers Union v. Farmers' Educational and Cooperative Union, 8 Cir., 1957, 247 F.2d 809. I find no merit to this contention.

This memorandum would be incomplete without an acknowledgment of the excellent work done by counsel for both parties. Many serious and intricate questions are involved here. They have been thoroughly tried and briefed with great skill. To a trial judge, assistance of this kind cannot be measured.

Judgment will be entered for plaintiff in accordance with the prayer of its complaint, with costs taxed against defendant.

Plaintiff will submit form of decree consistent with this opinion within fifteen days.

It is so ordered.