G. H. McCANN ET AL., Appellant, v. G. W. ANTHONY, Respondent.

St. Louis Court of Appeals, February 23, 1886.

1. TRADE MARKS—LABELS—INJUNCTION—FRAUD.—A label bearing six distinct points of resemblance to a label used by another person in the same business whose goods had acquired a market reputation, is such an imitation of the latter label as should be enjoined, where it appears that at least two persons were deceived thereby, and where the defendant's sales have increased, without other cause being shown, since the adoption of the label by the defendant.

2. APPELLATE PRACTICE.—Appellate courts, in equity proceedings, defer to the conclusions of the trial court on questions of fact arising in the cause, but not necessarily to its conclusions on questions of law.

APPEAL from the Greene County Circuit Court, W. F. GEIGER, Judge.

*Reversed and remanded with directions.*

BAKEWELL & BAKEWELL, for the appellants: Courts of equity will, with great jealousy, protect a manufacturer or trader from unlawful competition in his business, and will override all technicalities to reach justice in a particular case. *Ayres v. Meikle & Co.*, Pat. Off. Gaz. June 3, 1884, 1027; *Williams v. Johnson*, 2 Bosw. 1 *Wamsutta Mills v. Allen*, Cox's Manual, No. 660; *Harrison v. Taylor*, 11 Jur. (N. S.) 408; *Morgan v. Schwackhoffer ; Gambel v. Stephenson*, 10 Mo. App. 581. The principle of *Perry v. Truefitt* (6 Beav. 66–73), that no one has a right to put off his goods as the goods of a rival dealer, and that " he can not, therefore, be allowed to use name, marks, letters, or *indicia*, by which he may induce purchasers to believe that the goods that he is selling are the goods of another person," is constantly recognized by the courts as applicable in cases not strictly of technical trade-mark. *Croft v. Day,*

7 Beav. 84; *Holloway v. Holloway*, 13 Beav. 209; *Dixon Crucible Co. v. Guggenheim*, 2 Brewst. 321; *Stonebraker v. Stonebraker*, 33 Md. 252; *McLean v. Fleming*, 96 U. S. 245; *Knott v. Morgan*, 2 Keene, 213–19; *Lager Beer Case*, Fed. Rep. 28 July, 1885. p. 149; *Sexio v. Provezende*, L. R. 1 Ch. App. 192; *Landreth v. Landreth*, 29 Pat. Off. Gaz. 1131. The jurisdiction rests on fraud on the part of the defendant. The fact that actual fraudulent intent is not shown, or that it is disproved, does not defeat the remedy by injunction. Story Eq., sects. 951, 951 *h ;* High Inj., sects. 676–8–80, 675 *n*, 678 *n ;* Browne Trade-Marks, sect. 188; *Perry v. Truefitt*, 6 Beav. 66; *Brooklyn Co. v. Masury*, 25 Barb. 416; *Hostetter v. Vowinkle*, 1 Dill. 320; *Prowett v. Mortimer*, 2 Jur. (N. S.) 414; *Ingram v. Stiff*, 5 Jur. (N. S.) 947; *Amoskeag Mfg. Co. v. Spear*, 2 Sandf. (S. C.) 599; *Filley v. Fassett*, 44 Mo. 173; *Field v. Lenn*, Seton, 237; *Taylor v. Taylor*, 23 Eng. L. and Eq. 281; *Wetherspoon v. Currie*, L. R. 5 Eng. & Ir. App. 508; *Seleyon v. Humphrey*, 4 Aw. Pr. 394. Nor is it material that the simulated label or package has not been shown actually to have deceived any one. If the simulated label is likely to deceive, evidence of actual deception is unnecessary. High Inj., sect. 675, 691 *n ;* Codd. Dig. 282, 201–6–7, 482; *Moorman v. Hoge*, 2 Sawyer 78; *Glen Cove Mfg. Co. v. Ludemann*, U. S. C. C. S. D. N. Y. Jan'y 2, 1885, 32 Pat. Off. Gaz. No. 2; *Edelsten v. Edelsten*, 1 DeG., J. & S. 185; *McAndrew v. Bassett*, 10 Jur. (N. S.) 550; 33 L. J. ch. 561; *Filley v. Fassett*, 44 Mo. 173; *Abbott v. Bakers & Co.*, Tea. Ap. Cox, No. 379; L. T. Notes of Cases, 1871, p. 199; *Lockwood v. Bostwick*, 2 Daly 521; *Frese v. Bachoff*, 13 U. S. Pat. Off. Gaz. 635 (U. S. C. C. S. D. N. Y.) Nor need the fraudulent label be parallel with that which it imitates. Nor is it material that, seen side by side, the two labels, or the two packages, would not deceive the ordinary purchaser. Browne, sects. 223–4, 267–8, 397; High Inj., sects. 675, 690 *n ;* *Coleman v. Crump*, 70 N. Y. 573; *Chappell v. Sheard*, 2 Kay & J.

117; *Cook v. Starkweather*, 13 Abb. Pr. (N. S.) 392; *Millington v. Fox*, 3 Myl. & Cr. 338; *Sohl v. Geisendorf*, 1 Wilson (Ind.) 60; *Glenny v. Smith*, 2 Drew & Sm. 476; *Walton v. Crowley*, 3 Blatchf. 440–7; *Lea v. Wolf*, 13 Abb. Pr. (N. S.) 389; 46 How. Pr. 157. Nor is it material that the defendant may have ceased to deceive since the beginning of the trial. Walker, p. 464; *Landreth v. Landreth*, 29 Pat. Off. Gaz. 1131. Nor need the plaintiff show a registered trade mark. Trade Mark cases, 100 U. S. 82; *McLean v. Fleming*, 96 U. S. 245; *Lee v. Haley*, L. R. 5 Ch. 155; *Wetherspoon v. Currie*, L. R. 5 H. L. 508; *Massam v. Thorley*, 6 L. R. Ch. D. 574.

Francis H. Shepard, for the respondent: The appellate court will not reverse on weight of evidence in law cases. [Authorities, *passim*]. The reason for this rule applies in equity, and the appellate court is unwilling to disturb the decision of the chancellor below, except in cases free from doubt. *Dogget v. Lane*, 12 Mo. 215; *Wilson v. Maxwell*, 57 Mo. 146; *Davis v. Fox*, 59 Mo. 125; *Cornet v. Bertelsmann*, 61 Mo. 126; *Gimbel v. Pignero*, 62 Mo. 243; *Sharpe v. McPike*, 62 Mo. 307; *Chouteau v. Allen*, 70 Mo. 336; *Hodges v. Black*, 76 Mo. 537; *Hodges v. Black*, 8 Mo. App. 393; *Royle v. Jones*, 78 Mo. 406; *Judy v. Farmers' & Traders' Bank*, 81 Mo. 410. Not every imitation will be enjoined, but only such as are likely to do harm. Is it a colorable imitation? Is it likely to deceive buyers? Does it give to the imitator an unfair advantage? These are the questions the court asks, and it "does not decide cases in favor of fools or idiots." *Singer Mfg. Co. v. Wilson*, 3 C. L. J., last two paragraphs on p. 707 and first on p. 708; *Magee Furnace Co. v. LeBarrow*, 9 C. L. J. 198; 2 Kent Com. (12 Ed.) *336, 481, No. 1, B; 2 High Inj. (2 Ed.) 713, sect. 1088; *McLean v. Fleming*, 96 U. S. 245; Syllabus 1, 6 Otto, 245; *Conrad v. J. Urig Brewing Co.*, 8 Mo. App. 277. Smoking tobacco is the general name of a kind of goods, and every manufacturer is free

to use it. 2 High Inj. (2 Ed.) 689, sect. 1063; *Filley v. Fassett*, 44 Mo. 176; *Armstrong v. Kleinhens*, XI. C. L. J.*, pp. 179 and 180. Old Bachelor—Old Coon. Old is a generic word—Rising Moon no infringement of Rising Sun. *Morse v. Carroll*, I, C. L. J., p. 612. The word old and the red color have been used by respondent unrestrained for a number of years. *Filley v. Child*, VIII Reporter, 230. High, Injunction, 2 Ed., Vol II., p. 721, sect. 1,100. The difference in detail and in general appearance between the two labels is marked and striking —[with or without the nottce, Not Old Coon]—and appellants are not entitled to relief. High, Injunction, 2 Ed. Vol. II., sect. 1,086 p. 712; *Conrad v. Uhrig Brewing Co.*, 8 Mo. App. 282. One may use even another's trade-name, if he do it in good faith and so as to show that the goods are his own and not the others's. High, Injunctions,, 2 Ed. Vol. II. p. 700, sect. 1,075; *Ibid.*, p. 715, sect. 1,091.

THOMPSON, J., delivered the opinion of the court.

This is a suit in equity to enjoin a colorable imitation of a label, by which the plaintiffs have long marked an article of smoking tobacco of their manufacture, called "Old Coon Smoking Tobacco," which has acquired a valuable reputation in the market. This label is in form, size and color substantially as follows:

Registered May 4th, 1880, Trade Mark No. 7896.

The plaintiffs have used this label continuously since the year 1874, and have built up a large trade in this brand of tobacco. Their business has always been carried on at Springfield, Missouri. The defendant has also been engaged in manufacturing smoking tobacco at Springfield, Missouri, for several years past, and has for several years manufactured a brand of smoking tobacco, called "Old Bachelor Smoking Tobacco." In the year 1883, the plaintiffs began putting their "Old Coon Smoking Tobacco" in cloth bags, retaining the above label, which they had previously used on the paper bags, in which they had been accustomed to put up the same tobacco. Soon afterwards, namely, in the fall of 1883, the defendant began putting up his "Old Bachelor Smoking Tobacco" in cloth bags of the same size, at the same time changing his label, which previously had borne no colorable resemblance to the above label of the plaintiffs, to a label of the form, size, and color, substantially as follows, with the exception of the words "Not Old Coon :"

As soon as the plaintiffs discoverd that the defendant was putting up his tobacco with this label, they took the advice of counsel, and, under their instructions, a letter was written by their attorney to the defendant on the twenty-ninth of December, 1883, notifying him that his label deceived the public. The defendant replied that if that was so he would make some change in his label so that the public would not be deceived; and accordingly he made a change by printing on his label in large black letters the words "Not Old Coon," as above shown. The defendant sent one of these labels to the plaintiffs' attorney, who replied that the change did not amount to anything, and afterwards commenced this action. Two witnesses for the plaintiffs gave evidence to the effect that they had been deceived by the defendant's label into a supposition that the tobacco was the plaintiff's tobacco known as "Old Coon." On the other hand, the defendant introduced several witnesses, residents of Springfield, who testified under objection, after being shown these two labels, that they could not be deceived into taking one for the other, and that, in

their opinion, no one would be deceived into purchasing one for the other at a different time or place.

We do not think it necessary to rule upon the question of the propriety of admitting this last testimony, because the counsel for both parties were so candid as to state on the argument, what seems very obvious to us, that the whole case must be decided upon a comparison of the two labels, there being no conflict in the testimony. We may, also, say, at this point, that, in our view, that portion of the argument, advanced in favor of the defendant which presses upon our attention a consideration of the presumptions which obtain support of the judgment of the circuit court, and of the consideration to which the finding of that court is entitled, in a cause in equity, is entirely misapplied here. In a suit in equity where the facts are in dispute an appellate court will, according to the settled practice in this state, defer very considerably to the finding of the court below. Nor is it doubted that, where the question for decision is merely a question of law, the conclusions of the learned judges of the circuit court are entitled to respectful and considerate attention at the hands of the appellate courts; but, nevertheless, in such cases, the appellate courts are bound to give judgment according to their views of the law. Here, the facts being undisputed, the sole question is, what conclusion of law is to be applied to the facts; and, deferring very considerably to the opinion of the learned judge who decided this case, we nevertheless think that the plaintiffs are entitled to the substantial relief prayed for. We have had several cases of this general nature before us; the principles upon which they are to be determined are pretty well settled and understood; and there is no very serious difference as to those principles between the counsel of the opposing parties and the court. The governing principle is that one manufacturer shall not be allowed to impose his goods upon the public as the goods of another manufacturer and so derive a profit from the reputation of that other. It is not necessary

that the trade-mark, trade-name, sign, label, or other device which is employed by one merchant for that purpose shall be an exact imitation or counterfeit of the trademark, trade-name, sign, label, or other device employed by the other manufacturer. Nor is it required that the imitation be so close as to deceive cautious and prudent persons; it is sufficient that it be so close as to deceive the incautious and unwary, and thereby work substantial injury to the other manufacturer. Nor is it necessary to prove that actual fraud was intended by the manufacturer employing the simulated trade-mark, trade-name, sign, label, or other device, in order to entitle the other manufacturer to relief in equity or to an action for damages at law. Here, as in most other civil actions, the law does not attempt to penetrate the secret motives or intent with which the act is done, but contents itself with the conclusion that the party intended the natural and probable consequences of the act, and gives its judgment accordingly. These principles are embodied and discussed with more or less distinctness in the following cases: *Filley v. Fassett*, 44 Mo. 168; *Conrad v. Joseph Uhrig Brewing Co.*, 8 Mo. App. 277; *Gambel v. Stephenson*, 10 Mo. App. 581; *Sanders v. Jacobs*, 20 Mo. App. 96.

Applying these principles to the case before us, it is perceived that the defendant's label resembles the plaintiffs' in three distinct particulars, of form, size, and color. 1. In *form* it is an oblong, like that of the plaintiffs. It, also, has an oval vignette in the center, and the plaintiffs' has a circular vignette in the upper center. It, also, has the words, designating the number of the factory, printed in the left hand margin on a white field, the letters reading from the top downwards, as in the plaintiffs'. It, also, has the notice required by the internal revenue law, printed on a corresponding white field, on the right hand margin, the letters reading from the bottom upwards, as in the plaintiffs'. 2. In *size* it is the same as the plaintiffs'. 3. In *color* the whole

background is red, the most conspicuous of the colors, as in the plaintiffs'. Leaving out of view the fact that the defendant began putting up his tobacco in cloth bags soon after the plaintiffs began putting up their tobacco in the same kind of packages, which the defendant explains by stating that smoking tobacco could no longer be sold in paper packages, we find that there are no less than six distinct points of resemblance between the two labels. 1. The general form. 2. The oval vignette. 3. The lettering on the white field on the left hand side. 4. The lettering on the white field on the right hand side. 5. The size. 6. The general color. In view of these points of resemblance it is scarcely probable that when the defendant designed this label he did not have in his mind the distinct purpose of making as close an imitation of the plaintiffs' label as he felt it safe to do. Now, as he admits in his testimony that since he adopted this label his trade has increased, and does not state any facts which lead to the inference that this increase has been due to any other cause than his success in making this colorable imitation of the plaintiffs' label, we think it a fair conclusion that he had the purpose in view of banking, so to speak, on the plaintiffs' reputation and that he has measurably succeeded in so doing. We do not think that the printing of the words "Not Old Coon," upon the defendant's label affords a sufficient reparation of the wrong. The defendant can easily repair the wrong without much expense to himself and without destroying the plate upon which his label is printed, by adopting a color upon the background distinctly different from red, or by making a new plate and changing the other distinctive characteristics of form and size, above pointed out.

The judgment of the circuit court will be reversed and the cause remanded, with directions to enter a decree perpetually enjoining the defendant, his agents, and servants, from manufacturing, selling, or offering for sale, any smoking tabacco manufactured by him, or by any

other than the plaintiffs, having affixed upon the packages or bags containing the same, the label described in the petition as used by the plaintiffs, or any other label having such characteristic features as to constitute a colorable resemblance of the plaintiffs' label. It is so ordered. All the judges concur.