**ESSO, Inc., v. STANDARD OIL CO.**
No. 11099.

Circuit Court of Appeals, Eighth Circuit.
July 18, 1938.

Edward S. Rogers, of Chicago, Ill. (H. M. McLarin, of New York City, Frank H. Sullivan, and William O. Reeder, both of St. Louis, Mo., and Edwin S. Hall, of New York City, on the brief), for appellant.

Harry D. Nims, of New York City, and George O. Durham of St. Louis, Mo. (Harry C. Barker, of St. Louis, Mo., Louis

---

**3**

L. Stephens, of Chicago, Ill., and Wallace H. Martin and Stewart L. Whitman, both of New York City, on the brief), for appellee.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a decree enjoining appellant from using the term "Esso," either alone or in combination with other names, terms, letters, marks, symbols, or syllables in connection with petroleum and its products in the States of Missouri, Colorado, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Montana, North Dakota, Oklahoma, South Dakota, Wisconsin and Wyoming. The court found that the use of such word or term by itself or in such combination constituted an infringement of plaintiff's trade-marks established and used by it in said states, and that the use thereof by the appellant constituted unfair competition. We shall refer to the parties as they appeared below.

Plaintiff, in its bill of complaint, alleged that for a long time prior to the acts complained of, it had been engaged in the production and sale of petroleum products in the named states, and that it was now and had been for many years the largest and best known marketer of petroleum products in said states, under one or more of the following marks: "Standard Oil Company," "Standard Oil," "Standard," "S O C O," and "S O;" that during said time it had caused its products to be advertised before the public in said states, including the State of Missouri, and that it had expended many millions of dollars in advertising in various publications, outdoor advertising, and other forms of advertising, in which said marks or symbols were emphasized as trade-marks, identifying the products so advertised as sold by plaintiff; that these marks were made to appear before the public in many ways, and that each of them identified plaintiff; that it is the owner of the trade-marks for said terms, trade-names, and symbols in Missouri and the other states mentioned; that these marks have been used by plaintiff, or its predecessors, exclusively, and that in Missouri such exclusive use began prior to the year 1900; that plaintiff is a corporation organized under the laws of the State of Indiana, while defendant is a corporation organized under the laws of the State of Delaware; that the term "Esso," which appears in the corporate name of defendant and on containers and signs used by it, is merely the letters "S" (ess) and "O" (o) spelled out; that the letters "S O," whether spelled out (Ess O), or written as letters (S O) are identical in sound and meaning, the letters "S O" being the initials of plaintiff's trade-mark "Standard Oil;" that the Standard Oil Company of New Jersey caused the defendant to be organized, and owns all its stock; that shortly prior to the commencement of this suit, defendant began to sell and was selling in Missouri petroleum products under and in connection with the letters "S O," using them in their spelled-out form in the brand "Esso," and in other brands containing them; that the products so handled and sold by defendant in Missouri were furnished, directly or indirectly, by the Standard Oil Company of New Jersey; that the defendant is selling its petroleum products, not made nor sold by plaintiff, in containers carrying the colors red and white, or red, white and blue, in connection with the letters "S O;" that plaintiff protested against said invasion of its territory by the Standard Oil Company of New Jersey, through its subsidiary, the defendant, but that notwithstanding such protest it has persisted in invading plaintiff's said trade territory, and in committing the said acts of unfair competition, giving rise to confusion and uncertainty as to what products it was in fact selling.

Defendant admitted many of the facts alleged in the bill but denied its purpose unfairly to secure the benefit of plaintiff's good will, and asserted its right to use the words, terms, and names, and the right to extend its trade into the territory claimed by plaintiff. It put in issue the inferences to be drawn from the facts pleaded, rather than the basic facts alleged.

The court found in substance that all the material allegations of plaintiff's bill were true. The findings are elaborate and in considerable detail. It found as a fact that plaintiff's exclusive right to the use of the terms had been adjudicated by various courts; that the Standard Oil Company of New Jersey had recognized and acknowledged plaintiff's exclusive right to the use of these terms and words in said states; that in 1899 the Standard Oil Company of New Jersey acquired the corporate stock of the Standard Oil Companies, including plaintiff, and continued to hold that stock

until 1911, when such ownership ceased by reason of a decree of dissolution; that this ownership gave the Standard Oil Company of New Jersey no rights in nor ownership of the good will or trade-marks of plaintiff, but, on the contrary, that since the dissolution decree of 1911, the various Standard Oil Companies, including plaintiff, have used one or more of the trade-marks "Standard," "Standard Oil," "Standard Oil Company," "S O C O," and "S O," or abbreviations of them, exclusively in the territory where each had operated under the name Standard Oil Company, and each of said companies had acquired common law rights in these marks used by it in the states in which it had used such trade-marks; that each of these companies has competed with the others without limitation as to locality under many different names and trade-marks, not, however, including "Standard," or similar words; that as early as 1931, and prior to any use of the word or mark "Esso" by defendant in the mentioned states, plaintiff notified the Standard Oil Company of New Jersey that it would object to any use of that word in such states; that in 1935, defendant opened three stations in the City of St. Louis, Missouri, at which it sold and offered for sale gasoline, oil, and other petroleum products; that on signs, pumps, and other equipment at said stations it displayed the terms "Esso," "Esso, Inc.," and "Esso Station," and also combinations of "Esso," and offered for sale petroleum products in cans marked "Essolube," "Essoleum," and "S O Co. of N. J.;" that signs marked "Esso" also bore phrases like, "Not Connected with Standard Oil Company (Indiana);" that pamphlets were distributed by it containing similar statements, as did its other advertisements; that defendant's stations were decorated in the same colors as those of plaintiff; that plaintiff used its trade-marks and trade-names in the legitimate course of its business and not with the intent or purpose of forestalling or preventing legitimate exercise of any lawful rights of the defendant, or its parent company; that the public regards the letters "S O" when used in connection with petroleum products sold by plaintiff as products sold by it; that the intent of the Standard Oil Company of New Jersey, in its use of "Esso" as a brand and as a part of the corporate name of defendant, is to sell its goods as "Standard Oil" and "S O" goods in states in which these brands are not its trade-marks, but are the trade-marks and trade-names of plaintiff, and by so doing to enable it to deceive the public to its advantage and profit, and to use and profit by the reputation, popularity and good will of plaintiff; that members of the public, seeing the word "Esso" displayed at defendant's stations believe that the products sold are the products of plaintiff, or of a subsidiary of plaintiff, and that such belief is not eliminated nor greatly affected by the use of the words, "Not Connected with Standard Oil Company (Indiana)," but that members of the public who have purchased merchandise in defendant's stations have believed, because of the use of the term "Esso" there displayed, that they were getting plaintiff's products, and were thereby deceived, and the likelihood of confusion arising out of defendant's use of "Esso" is not obviated by defendant's explanatory phrases, or other precautions of defendant.

Defendant, in seeking reversal, urges: (1) That no reasonable person could be misled into believing defendant's business and products are those of plaintiff; (2) that "Esso" is not similar to any brand used by plaintiff, or any name by which plaintiff or its goods are known; (3) that the "not connected with" announcements dispel any notion that anyone could possibly entertain that defendant, Esso, Incorporated, is connected in any way with the plaintiff, Standard Oil Company (Indiana); (4) that plaintiff has attempted to forestall the extension of the use of the Esso trade-mark; (5) that the operation of the dissolution decree is obstructed by the decree below.

As has already been observed, the lower court found all the material facts in favor of plaintiff. These findings are presumptively correct, and while not conclusive on appeal in an equity suit, they will not ordinarily be disturbed, unless it appears that a serious mistake has been made in the consideration of the evidence, or an obvious error has been committed in the application of the law. Woods-Faulkner & Co. v. Michelson, 8 Cir., 63 F.2d 569; Arkansas Natural Gas Corp. v. Pierson, 8 Cir., 84 F.2d 468; Nave-McCord Mercantile Co. v. Ranney, 8 Cir., 29 F.2d 383; Staley v. Dwyer, 8 Cir., 29 F.2d 982; Fienup v. Kleinman, 8 Cir., 5 F.2d 137; Bowmaster v. Carroll, 8 Cir., 23 F.2d 825; Karn v. Andresen, 8 Cir., 60 F.2d 427. Recognizing this rule, defendant seeks to

avoid its effect by the assertion that the findings of fact and conclusions of law are obviously not those of the District Court but of plaintiff's counsel, and hence, they should be disregarded. This voluntary statement of counsel finds no support in the record. There was no motion filed in the court below attacking the findings, nor challenging the regularity of the procedure in entering them, and there is no assignment of error upon which this contention could be based. It was not improper for counsel to prepare and present to the court proposed findings of fact and conclusions of law, and the findings when adopted and signed by the court became the court's findings. It is as much the function of counsel to present his arguments and views as to the facts as it is to present such argument and views as to the law. An examination of the record convinces that the findings of the court are sustained by abundant evidence. These findings, therefore, conclusively answer defendant's contentions 1, 2 and 3.

The facts can scarcely be said to have been in serious dispute, but the parties do not agree as to the inferences to be drawn from the basic facts. It is practically conceded that the plaintiff had used the letters, names, terms and marks prior to 1900 in the named states as its trade-marks. The court so found, and the evidence sustains that finding. Neither is there any contention that the defendant had used in the named states the offending trade-marks prior to 1935, when it opened three stations in the City of St. Louis, Missouri.

■ It is urged that the word "Esso" is not so similar to the trade-marks "Standard Oil," "S O," and "S O C O" as to be confusing. It is the accepted rule that similiarity of sound, as well as appearance, of the words or letters may constitute infringement. Stix, Baer & Fuller Co. v. Alfred J. Sweet Co., 8 Cir., 49 F.2d 598; Feil v. American Serum Co., 8 Cir., 16 F.2d 88; McLean v. Fleming, 96 U.S. 245, 24 L.Ed. 828; Celanese Corp. v. Vanity Fair Silk Mills, Cust. & Pat.App., 47 F.2d 373; Federal Mill & Elevator Co. v. Pillsbury Flour Mills, Cust. & Pat.App., 49 F.2d 1042. "Esso," when pronounced, is indistinguishable from "S O." The initials of the Standard Oil Company are the source from which these marks and brands were derived, and we surmise the value of the brand "Esso" lies in the fact that it suggests "Standard Oil." It has been held in a number of decisions that the name "Standard Oil Company" is entitled to protection. Standard Oil Co. of New Mexico v. Standard Oil Co. of California, 10 Cir., 56 F.2d 973; Standard Oil Co. of Maine v. Standard Oil Co. of New York, 1 Cir., 45 F.2d 309; Standard Oil Co. v. Michie, D. C.Mo., 34 F.2d 802.

■ The court found that the plaintiff's trade-marks had been so long and consistently used in the named states in connection with the sale of its products that they had come to be known by the public as indicating the origin or ownership of the products. The marks were employed in connection with its business and were appurtenant to that business. The importance of such trade-marks lies in the fact that they have become known to the trade as the marks of the producer or manufacturer who had adopted them, and in being known to the public as the name of an article which has met with popular favor. Plaintiff's trade-marks had come to indicate the origin or ownership of its products to which they were affixed. They distinguished them from those of others, and they served the purpose of preventing others from passing off their products as the products of plaintiff. They are of value to plaintiff as aids in protecting its good will and reputation. It is the purpose of the law to protect not only the owner in his property, but to protect the public from being deceived by reason of a misleading claim that the article bearing the trade-mark is the article produced or manufactured by the owner of the trade-mark, when in fact it is not. No one has a right to represent his goods as the goods of some one else, and when a trade-mark is violated, the wrong consists in the sale of goods of one producer or manufacturer as those of another. While a trade-mark may not in itself constitute property, it is a means of preserving good will, which is property. It is inseparable from good will, and it can not be disassociated from the business to which it belongs. It is common-place to say that the trade-name for the goods of a producer, manufacturer, or trader may not be used by another as the trade-mark for his similar, rival goods. This, manifestly, would be a fraud.

■ It was not necessary to show that any person had been actually deceived by the defendant's use of the trade-names or trade-marks in question and led to purchase its goods on the belief that they were the

goods of plaintiff. Queen Manufacturing Co. v. Isaac Ginsberg & Bros., 8 Cir., 25 F.2d 284; Layton Pure Food Co. v. Church & Dwight Co., 8 Cir., 182 F. 24. The court, however, found this to be the fact, and this finding is sustained by the evidence. The court found, and the evidence clearly shows, that deception will be the probable result of defendant's act, and this was sufficient to establish a case of unfair competition and of infringement. The law of trade-marks is so closely allied to that of unfair competition that it has often been said to be a part of the common law of unfair competition.

The right of the use of marks grows out of their actual use, and not by their mere adoption. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713; United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141.

The circumstance which distinguishes this case from many others is the fact that defendant's parent company bears the same name substantially as the plaintiff, and, confessedly, in its own trade territory it would have the right to use any of the words or names it is now using. The question is, therefore, can it use these names, letters and marks in plaintiff's trade territory. In Federal Trade Commission v. Algoma Lumber Co., 291 U.S. 67, 54 S.Ct. 315, 78 L.Ed. 655, in an opinion by Mr. Justice Cardozo, it is said (page 321):

"* * * a name legitimate in one territory may generate confusion when carried into another, and must then be given up."

The owner's right to have his trade-mark protected is coextensive only with the territory throughout which it is known and from which it has drawn its trade. He is not entitled to protection in advance of the extension of his trade. It must be constantly borne in mind that the mark in the abstract is of no significance, but is auxiliary to and inseparable from the good will of its possessor, and it exists only as an incident of the business in which it was acquired and with which it remains identified. As between conflicting claimants to the right to use a name or mark, priority, of appropriation implies more than priority in employment of the mark. It means that he who first employed the mark in a particular market has the better right in that market. A subsequent user and appropriator who has in good faith adopted and used the mark in territory into which goods of the first appropriator have not been used or sold, is entitled to protection against the first appropriator of the mark. Hanover Star Milling Co. v. Metcalf, supra; United Drug Co. v. Theodore Rectanus Co., supra.

In the last cited case there was a conceded priority of the use of a trade-mark by its appropriator in the State of Massachusetts. The right to use that trade-mark in the State of Kentucky was protested by a concern that was using such mark on similar goods in that state, although, confessedly, its adoption and use of the mark was subsequent in time to the adoption and use of the trade-mark in Massachusetts. The facts in that case are such as to make it a very persuasive, if not controlling, authority in the instant case. In the course of the opinion, the court, after observing that the general rule as between conflicting claimants is that right to use the trade-mark is dependent upon the priority of its appropriation said (page 51):

"But the reason is that purchasers have come to understand the mark as indicating the origin of the wares, so that its use by a second producer amounts to an attempt to sell his goods as those of his competitor. The reason for the rule does not extend to a case where the same trade-mark happens to be employed simultaneously by two manufacturers in different markets separate and remote from each other, so that the mark means one thing in one market, and an entirely different thing in another. * * * And it results, as a necessary inference from what we have said, that petitioner being the newcomer in that market, must enter it subject to whatever rights had previously been acquired there in good faith by the Rectanus Company and its predecessor. To hold otherwise—to require Rectanus to retire from the field upon the entry of Mrs. Regis's successor—would be to establish the right of the latter as a right in gross, and to extend it to territory wholly remote from the furthest reach of the trade to which it was annexed, with the effect not merely of depriving Rectanus of the benefit of the good will resulting from his long-continued use of the mark in Louisville and vicinity, and his substantial expenditures in building up his trade, but of enabling petitioner to reap substantial benefit from the publicity that Rectanus has thus given to the mark in that locality,

and of confusing if not misleading the public as to the origin of goods thereafter sold in Louisville under the Rex mark, for, in that market, until petitioner entered it, 'Rex' meant the Rectanus product, not that of Regis."

In the instant case, the court found that the letters, words and names in controversy have, by reason of their long use in connection with the business and trade of plaintiff, come to be understood by the public in the states named, as designating the goods and products of plaintiff. In these circumstances, defendant, being subsequent in time in the territory mentioned, is not entitled to use these terms' or names, even though they may be abbreviations of its own name, because to do so would cause its goods and products to be known in the market of those states as those of plaintiff.

It is argued that defendant is endowed by inheritance or otherwise, with the name "Standard Oil Company," and that plaintiff is not entitled to a monopoly of the Standard Oil reputation. The only Standard Oil reputation known to the public in the states mentioned is the reputation of the plaintiff in this suit. There was never any joint ownership or property in the name of the parent company, Standard Oil Company of New Jersey. We are dealing here with the good will incident to the name and brands of the Standard Oil Company in the mentioned states. But even when these companies were operating prior to the decree of dissolution, they were operating in different territories and had their own good will built up from such operation. Thus, in the decision of the Supreme Court in Standard Oil Company of New Jersey v. United States, 221 U.S. 1, at page 77, 31 S.Ct. 502, at page 522, 55 L.Ed. 619, 34 L.R.A.,N.S., 834, Ann.Cas. 1912D, 734, we find it said that, " * * * the country was divided into districts and the trade in each district in oil was turned over to a designated corporation within the combination, and all others were excluded * * *." There was no right of good will established in this territory by the New Jersey Company. There was no good will owned in common, but a separate good will appertaining to the separate business as carried on by the various companies in their allotted territory. Not only has the New Jersey Company never had any actual business in these states, but that company has for many years acquiesced in the asserted claim of the various companies formerly in combination to the right of good will in their separate territories, and has itself claimed such rights in the territory occupied by it.

It is urged that the so-called explanatory words, "Not connected with Standard Oil Company (Indiana)," were sufficient to avoid the charge of unfair competition. First, it may be noted in passing that manifestly defendant recognized that without this explanation, confusion or deception might result. The court found that notwithstanding the explanatory words, actual deception and confusion did result. The marks are simply words, or letters of the alphabet, not derivative of the product. They have but one meaning, and point to the source of the product. They mean "Standard Oil," and "Standard Oil" in the named states means Standard Oil Company of Indiana.

In Phillips v. Governor & Co., 9 Cir., 79 F.2d 971, the defendant was enjoined from using the name Hudson Bay Fur Company, even though for many years it had used on its sign, immediately under the name Hudson Bay Fur Company, the statement "Not connected with the Hudson Bay Co. of Canada." (page 972.)

In Jacobs v. Beecham, 221 U.S. 263, 31 S.Ct. 555, 55 L.Ed. 729, it is said (page 556):

"To call pills Beecham's pills is to call them the plaintiff's pills. The statement that the defendant makes them does not save the fraud. That is not what the public would notice or is intended to notice, and, if it did, its natural interpretation would be that the defendant had bought the original business out and was carrying it on."

See, also, Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526; Shaver v. Heller & Merz Co., 8 Cir., 108 F. 821, 65 L.R.A. 878; McCann v. Anthony, 21 Mo. App. 83.

It is claimed by defendant that plaintiff has been attempting to forestall the extension of defendant's business into this territory. The court found as a fact that this was not true. The rule seems to be well settled that "where two parties independently are employing the same mark upon goods of the same class, but in separate markets wholly remote the one from the other," each has the exclusive right to the use of the mark within the territory in which he has used it, to the exclusion of the other. United Drug Co. v. Theodore

8

Rectanus, supra; Hanover Star Milling Co. v. Metcalf, supra. Plaintiff, when it had the undoubted right so to do, extended the use of its trade-marks, and this, we think, can not be claimed to be forestalling.

It is finally urged that the decree appealed from, granting an injunction against the defendant, will obstruct the operation of the dissolution decree. Plaintiff is not asking that defendant be enjoined from entering its trade territory, but that it be enjoined from infringing plaintiff's trade-marks, and from unfair competition. The dissolution decree established these companies as separate, individual and independent corporations. It was not the purpose of the decree to prevent the application of the established principles and rules of unfair competition to them. No such question was there involved and these companies come into a court of equity on the questions here involved, unhampered by the decree of dissolution.

The decree appealed from is therefore affirmed.