### F. W. FITCH CO. v. CAMILLE, Inc.

#### No. 11506.

Circuit Court of Appeals, Eighth Circuit.

Oct. 16, 1939.

W. P. Bair, of Chicago, Ill. (Bair & Freeman and Will Freeman, all of Chicago, Ill., on the brief), for appellant.

A. W. Murray, of Chicago, Ill. (William N. Plymat, of Des Moines, Iowa, on the brief), for appellee.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

GARDNER, Circuit Judge.

Appellant, defendant below and hereinafter so named, appeals from a decree which enjoined it from alleged acts of unfair competition.

Plaintiff, in its bill of complaint, alleged that for many years it had continuously engaged in the manufacture, advertising, distribution and sale throughout the United States of a preparation for stopping runs in hosiery, on which merchandise it applied the fanciful term "Run-R-Stop" as its distinguishing trade-mark; that due to the skill

and expert workmanship and high quality of its preparation bearing such trade-mark, and by reason of the integrity, progressiveness and ability of its management, and the extensive and continuous national advertising in many magazines of wide distribution throughout the United States, its trade-mark "Run-R-Stop" had acquired a secondary signification throughout the trade and the public generally, as an understood reference to and indicating a preparation for stopping runs in hosiery originating exclusively with plaintiff and that its said trade-mark was a substantial part of its valuable good will. That on or about July 19, 1938, it received a certificate of registration for its trade-mark; that the defendant had been and still was infringing its trade-mark and was competing unfairly with plaintiff by making, advertising, and placing upon the market, long after plaintiff's prior adoption, use and registration of said trade-mark, a preparation for stopping runs in hosiery bearing the infringing mark "Stop-A-Run," which it was alleged is a colorable imitation and simulation of plaintiff's registered trade-mark "Run-R-Stop"; that said mark was affixed by defendant to a preparation for stopping runs in hosiery; that defendant's product bearing such infringing trade-mark was being sold in the same retail stores as plaintiff's product and to the same class of customers; that the defendant thereby enabled unscrupulous dealers to substitute its product for plaintiff's product; that defendant had not done any advertising to consumers but was endeavoring to and had unlawfully appropriated to itself the good will theretofore established by plaintiff in said trade-mark and distinctive design, color and dress of package or container; that the term "Stop-A-Run" used by defendant so nearly resembles the registered trade-mark "Run-R-Stop" owned and in long prior extensive use by plaintiff on preparations for stopping runs in hosiery, as to be likely to cause confusion or mistake in the mind of the public or to deceive and mislead purchasers as to the source or origin of such goods. It was also alleged that since about October, 1932, plaintiff packaged and placed upon the market in a distinctive dress and style of container, which, due to the new, original and ornamental appearance, had distinguished its package or container from other goods marketed, and that such distinctive design or appearance had become associated in the minds of the trade and consumers as identifying the product of plaintiff, but that de-

fendant with knowledge of plaintiff's prior use of such dress and design, had copied or imitated the general style, appearance and design of plaintiff's package, thereby assisting dealers to substitute or palm off defendant's infringing preparation as and for plaintiff's preparation, and by such unlawful acts defendant had competed and was competing unfairly with the plaintiff to its great damage. Plaintiff also alleged that it was the owner of a United States patent for an ornamental design for containers, which defendant was infringing. Plaintiff asked decree enjoining defendant from the alleged acts of unfair competition and of infringement.

The lower court determined the issues as to unfair competition in favor of the plaintiff and entered findings sustaining all the substantial allegations in plaintiff's bill of complaint on that issue. It found against the plaintiff on the issue of infringement of patent and as no appeal has been taken from that part of the decree by the plaintiff, that issue need be given no further mention. The court entered quite elaborate and detailed findings sustaining all the material allegations of the bill of complaint.

Plaintiff manufactures a liquid preparation, a sticky material, which when applied to a run in a stocking, dries and holds the thread. Vera Camille Grote organized plaintiff in 1932 and has been the active party in promoting and marketing this product. In developing the product, she first worked with chemical assistants to develop a formula and then devised the trademark "Run-R-Stop" for it. In order to provide a small container that could be carried by women to be instantly available should a break in the stocking occur, and to avoid the escape of fluid from an ordinary tube, she adopted a form of small bakelite case, large enough to carry the tube wrapped in paper and small enough to meet the requirements of her idea. She created an ornamental design with which her container was decorated, on which she was granted a patent October 5, 1933. The lower court found that defendant did not use this particular "rib" design, and hence, was not guilty of infringement, but found that it had "contented itself with the use of a container or vanity similar in size, coloring and general appearance" to the plaintiff's container. All of plaintiff's containers have a black body portion, with a cap or top in the colors, red, white, orchid or lettuce green. Before its product was put on the

market in 1932, there was no similar product. Great success attended commercial development, and the product was extensively advertised in national magazines and newspapers, the total number of individual advertisements exceeding 200,000,000 copies. Over 8,000 display racks were placed in use and are now in use in stores in the United States. Advertising expenditures have exceeded $150,000. Sales have increased from 1933 to the extent that 10,000,000 individual packages have been sold.

Until defendant entered the field in June, 1938, plaintiff was without competition. The lower court found that by reason of the integrity, progressiveness and ability of its management and its extensive and continuous advertising, plaintiff's trade-mark "Run-R-Stop" "had acquired a secondary signification throughout the trade and the public generally, in the State of Iowa and elsewhere, as an understood reference to and indicating a preparation for stopping runs in hosiery originating exclusively with the plaintiff, and said trade-mark is a substantial part of the good will of plaintiff"; that plaintiff's product, since about October, 1933, had been "packaged and placed upon the market in a distinctive dress and style of container * * * which, due to the new, original and ornamental appearance thereof, has readily distinguished plaintiff's said container or package from other goods theretofore marketed, and such distinctive design or dress or appearance of plaintiff's package has become associated in the minds of the trade and consumers as identifying the product of the plaintiff, and that defendant knew of plaintiff's prior use of said distinctive dress or design of container."

The defendant put out its product to the same character of trade as plaintiff, through chain stores and department stores. It did not mark the product under its corporate name of "F. W. Fitch Company," but used the assumed name of "Clem Chemical Company," and for its product it used the name "Stop-A-Run." There was evidence of similarity of design and style of defendant's package to that of plaintiff, and that dealers commented upon the similarity in appearance. Plaintiff introduced testimony showing fifteen specific instances wherein persons had called for "Run-R-Stop" in retail stores and were given defendant's product. Plaintiff's sales have fallen off since the defendant commenced marketing its product.

The lower court entered a decree enjoining defendant (1) from infringing plaintiff's trade-mark and from imitating the general appearance or dress of the container, and from using advertising display cards simulating the general appearance of plaintiff's advertising display cards; (2) from using, under the trade name "Clem Chemical Company," the trade-mark "Stop-A-Run" for a product similar to plaintiff's product, in a container simulating the general appearance or dress of plaintiff's "Run-R-Stop" package, and from using in connection therewith advertising display cards simulating the general appearance of plaintiff's advertising display cards; (3) from using the term "Stop-A-Run" in connection with the manufacture, advertising, distribution and sale of a preparation for stopping runs in hosiery, or similar purposes; (4) from using the term "Stop-A-Run" in association with a container simulating the general appearance or dress of plaintiff's "Run-R-Stop" package; (5) from using a container simulating the general appearance or dress of plaintiff's "Run-R-Stop" package; (6) from using counter display cards simulating the general appearance of plaintiff's counter display cards advertising and displaying its "Run-R-Stop" product. Jurisdiction was retained for determination of damages.

Defendant contends that in none of the features complained of has it unfairly copied or simulated plaintiff's features; that the substitution of defendant's product for those of plaintiff was brought about by the fact that "Run-R-Stop" is descriptive of the product so that when the product is called for by that name, the merchant might reasonably assume that the customer desires something to stop runs in hosiery, and that it was plaintiff's use of a descriptive mark, and the nature of the product, and the size of the package, and not any other act of defendant that brought about the substitutions. It seeks reversal on the grounds that: (1) no wrongful act of defendant caused a single instance of substitution or confusion; (2) the nature of the product and the fact that it was called for by descriptive name caused the substitutions.

The findings of the court are presumptively correct and should not be set aside nor disturbed unless clearly erroneous. Rules of Civil Procedure, rule 52, 28 U.S.C.A. following section 723c; Esso, Inc., v. Standard Oil Co., 8 Cir., 98 F.2d 1, 5. Whatever conflict there may have been in

the evidence has been resolved in favor of the plaintiff and the court's findings are sustained by abundant, if not uncontradicted, evidence. The issues presented are similar in many respects to those considered in Esso, Inc., v. Standard Oil Co., supra. We there said: "The importance of such trade-marks lies in the fact that they have become known to the trade as the marks of the producer or manufacturer who had adopted them, and in being known to the public as the name of an article which has met with popular favor. Plaintiff's trade-marks had come to indicate the origin or ownership of its products to which they were affixed. They distinguished them from those of others, and they served the purpose of preventing others from passing off their products as the products of plaintiff. They are of value to plaintiff as aids in protecting its good will and reputation. It is the purpose of the law to protect not only the owner in his property, but to protect the public from being deceived by reason of a misleading claim that the article bearing the trade-mark is the article produced or manufactured by the owner of the trade-mark, when in fact it is not. No one has a right to represent his goods as the goods of some one else, and when a trade-mark is violated, the wrong consists in the sale of goods of one producer or manufacturer as those of another. While a trade-mark may not in itself constitute property, it is a means of preserving good will, which is property."

The law of trade-mark is so closely allied to that of unfair competition that it has often been said to be a part of the common law of unfair competition. Esso, Inc., v. Standard Oil Co., supra; S. S. Kresge Co. v. Winget Kickernick Co., 8 Cir., 96 F.2d 978; United Drug Co. v. Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141. The inquiry under the registered trade-mark is whether there has been a colorable imitation of it upon goods of the same class as those to which it has been appropriated, while under the law of unfair competition the inquiry is whether by any kind of imitation the purchaser is misled in buying goods of one manufacturer for those of another. Hopkins, Trade Marks, Trade Names and Unfair Competition, 4th Ed., Sec. 22.

As has been observed, the court found that plaintiff's trade-mark had acquired a secondary meaning as a reference to and indicating a product originating ex-clusively with plaintiff. Such a trade-mark is entitled to protection. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195. The similarity of names of these trade-marks, the court found, led to confusion, and they were such as would inevitably do so. In Esso, Inc., v. Standard Oil Co., supra, this court held that "Esso" and "S. O." were subject to confusion in the minds of the purchasing public. In Armstrong Paint & Varnish Works v. Nu-Enamel Corp., supra, "Nu-Enamel" as a trade name was held to be infringed as a registered trade-mark and subject to unfair competition by the use of the name "Nu-Beauty Enamel." In Coca-Cola Co. v. Koke Co., 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189, the use of "Koke" in competition with "Coca-Cola" was enjoined. Even where a name or symbol has acquired a secondary meaning which emphasizes the product more than the producer, he is entitled, nevertheless, to the benefit of that meaning. Coca-Cola Co. v. Koke Co. supra.

That the trade-mark "Run-R-Stop" is infringed by "Stop-A-Run," used in connection with the same kind of product, seems too clear for argument. Similarity, rather than identity, is the usual device resorted to by one party who seeks to benefit himself by the good name of another. As stated by Judge Stone in S. S. Kresge Co. v. Winget Kickernick Co., supra [96 F.2d 987]: "The test of whether a trademark is infringed has been several times stated by this Court to be whether 'an ordinarily prudent purchaser be liable to purchase the one, believing that he was purchasing the other.'" See, also, Northam Warren Corp. v. Universal Cosmetic Co., 7 Cir., 18 F.2d 774.

The dress or general appearance of plaintiff's package was, under the evidence and the findings of the court, also entitled to protection. Wellman & Dwire Tobacco Co. v. Ware Tobacco-Works, C.C., 46 F. 289; Florence Manufacturing Co. v. J. C. Dowd & Co., 2 Cir., 178 F. 73; Brooks v. Great Atlantic & Pacific Tea Co., 9 Cir., 92 F.2d 794; Kostering v. Seattle Brewing & Malting Co., 9 Cir., 116 F. 620; N. K. Fairbank Co. v. Bell Manufacturing Co., 2 Cir., 77 F. 869; Layton Pure Food Co. v. Church & Dwight Co., 8 Cir., 182 F. 24.

The use of the name "Clem Chemical Company" and "Clemco" by defendant was a part of the scheme of deception

found by the court to have been practiced by defendant. The similarity of "Clemco" to "Camille" may not be striking, but the dissimilarity between "F. W. Fitch Company" and "Camille" is certainly much greater. It is not essential that there be actual deception proven by plaintiff. Esso, Inc., v. Standard Oil Co., supra; S. S. Kresge Co. v. Winget Kickernick Co., supra. The evidence in this case, however, showed, and the court found the fact to be, that purchasers had been actually deceived. Actual deception having been shown establishes the probability or likelihood of deception. But it is urged that no wrongful act of defendant caused a single instance of substitution or confusion. A similar argument was presented in Wolf Bros. & Co. v. Hamilton-Brown Shoe Co., 8 Cir., 206 F. 611, 617. In disposing of this contention this court said: "If a manufacturer or wholesale dealer willfully puts up goods in such a way that the ultimate purchaser will be deceived into buying the goods of another, it is no defense that he does not deceive and has no intention of deceiving the retailer, to whom he himself sells the goods. The question is whether the defendants have or have not knowingly put into the hands of the retail dealers the means of deceiving the ultimate purchaser." See, also, Reid, Murdoch & Co. v. H. P. Coffee Co., 8 Cir., 48 F.2d 817; New England Awl & Needle Co. v. Marlborough Co., 168 Mass. 154, 46 N.E. 386, 60 Am.St.Rep. 377.

In Reid, Murdoch & Co. v. H. P. Coffee Co., supra, it is said [48 F.2d 819]: "It is, however, the contention of the defendant, and the lower court so held, that the plaintiff was not entitled to injunctive relief against it for unfair competition because it had not connived with the retail grocers in their acts of unfair competition. It is true the defendant had no direct part in these acts of unfair competition. The goods, however, as put out by it bore the name 'Monarch,' and, while it is true the containers bore other distinguishing marks, yet the use of the word 'Monarch' furnished the merchants with the means or tools of committing a fraud upon the public. The acts of these retail merchants might well have been anticipated by the defendant. These goods were supplied by the defendant for the purpose of being resold on the market, and the use of this word 'Monarch' by it made it possible for the retail merchants to commit a fraud upon the public to the injury of the plaintiff."

 It is finally contended that plaintiff's trade-mark "Run-R-Stop" has become descriptive of the product and that customers will call for it by that name and the merchant may reasonably assume that the purchaser desires something to stop runs in hosiery. Plaintiff was a pioneer in producing and advertising a desired product, attractively prepared for market. Through its course of business it has created or built up a good will which defendant is attempting to appropriate. It can not be said, we think, that "Run-R-Stop" is essentially a descriptive term or a generic term. It is intended to convey some idea of the use to which the product may be applied, but, certainly, education was required to acquaint the public with the significance of the term and the possible use of the product. To the extent that it has built up a good will so that its name is in the mind of the public connected with its product, plaintiff is entitled to protection, and that right is not to be denied because plaintiff was successful in impressing the public consciousness with its name.

The decree appealed from is therefore affirmed.