**Vene D. FRY, d/b/a Vene D. Fry Company, Appellant,**

v.

**LAYNE–WESTERN COMPANY, Appellee.**

No. 16371.

United States Court of Appeals
Eighth Circuit.

June 23, 1960.

On the Merits Aug. 9, 1960.

Rehearing Denied Oct. 13, 1960.

George T. Morton, Jr., of Watson, Ess, Marshall & Enggas, Kansas City, Mo., for appellant.

Edward T. Matheny and C. E. Lombardi, Jr., Kansas City, Mo., for appellee.

Before SANBORN, VAN OOSTERHOUT and MATTHES, Circuit Judges.

On Jurisdiction

PER CURIAM.

This appeal challenges the validity of an injunction granted the plaintiff (appellee) in an unfair competition action. The decision of the trial court is reported in 174 F.Supp. 621.

We find nothing in the record on appeal which demonstrates that the District

Court had jurisdiction of the case. Diversity of citizenship was neither pleaded nor proved. There is no allegation in the complaint that there is any amount in controversy.

■ An action for unfair competition is a common-law cause of action and does not arise under any law of the United States. Under § 1338(b) of 28 U.S.C.A., a claim of unfair competition may be joined with a "substantial and related claim under the * * * trade-mark laws," but, to be "related" to a claim arising under those laws, the unfair competition claim must rest upon substantially identical facts. Landstrom v. Thorpe, 8 Cir., 189 F.2d 46, 51, 26 A.L.R.2d 1170, 1177, and cases cited. See, also, Powder Power Tool Corp. v. Powder Actuated Tool Co., Inc., 7 Cir., 230 F.2d 409, 413. An action for infringement of a common-law trade-mark is not one "arising under any Act of Congress relating to * * * trade-marks," within the meaning of 28 U.S.C.A. § 1338(a). Magic Foam Sales Corp. v. Mystic Foam Corp., 6 Cir., 167 F.2d 88.

Since the District Court did not question its authority to try this case and both parties invoked its jurisdiction to decide the controversy on the merits, and since the defendant has at no time raised any question of lack of jurisdiction, it seems probable that jurisdiction did, in fact, exist.

■■ It is elementary that, in federal courts, jurisdiction must be affirmatively shown; that the facts necessary to establish jurisdiction must be pleaded; that lack of jurisdiction cannot be waived by the parties or ignored on appeal; and that the appellate court must satisfy itself not only of its own jurisdiction but also of that of the District Court. Kern v. Standard Oil Co., 8 Cir., 228 F.2d 699, 701 and cases cited.

Section 1653, Title 28 U.S.C.A., provides: "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."

■ In Illinois Terminal R. Co. v. Friedman, 8 Cir., 208 F.2d 675, 677, and in Kern v. Standard Oil Co., supra, at page 701 of 228 F.2d, we granted the parties leave to amend the pleadings to show, if possible, that federal jurisdiction did, in fact, exist. We shall do the same in this case. The parties may have thirty days to amend their pleadings to show jurisdiction. If jurisdiction is established, the case will be decided on the merits without further argument. If the pleadings are not amended to show jurisdiction, within thirty days, the case will be remanded to the District Court with directions to dismiss it for want of jurisdiction.

### On the Merits

VAN OOSTERHOUT, Circuit Judge.

Defendant Fry has appealed from final judgment determining that he is engaged in unfair competition with the plaintiff Layne-Western Company in the sale of vertical turbine pumps in plaintiff's sales area, and granting an injunction against the defendant substantially in accordance with the prayer of the plaintiff's complaint.

On June 23, 1960, we filed per curiam opinion noting that jurisdiction in this case, if it exists, must be based on diversity of citizenship. We found nothing in the record to support diversity jurisdiction. Pursuant to leave granted, the parties have now jointly filed stipulation supplementing the printed record which includes a certified copy of petition for removal of this action to federal court. Jurisdiction based upon diversity of citizenship and the requisite amount has now been satisfactorily established.

Inasmuch as the trial court, in its opinion reported in 174 F.Supp. 621, has set out the pertinent facts in considerable detail, and has set out the issues and its views thereon, we shall try to limit our discussion of the facts to those essential to the decision of this case.

Plaintiff is a Delaware corporation, organized in 1924. It is an affiliate [1] of

---

1. No, affiliation contract is in evidence and there is no evidence setting out the precise terms or duration of the affiliation agreement. It appears, however, to be undisputed that the plaintiff has the exclusive right to sell the Memphis company's pumps in the eight state area.

Layne & Bowler, Incorporated, of Memphis, Tennessee, hereinafter usually called the Memphis company. It has the exclusive right to sell the Memphis company's pumps in an eight state area. Such rights as to Missouri, Kansas, Nebraska, Oklahoma and Colorado were acquired in 1924, as to Illinois and Iowa in 1936, and as to Wyoming in 1953.

In September, 1955, defendant, a licensed engineer, became a manufacturer's representative at Kansas City, Missouri, for Layne & Bowler Pump Company, a California corporation of Los Angeles, California, hereinafter called the California company. Defendant's territory covered western Missouri and part of Kansas. Defendant also represented other manufacturers in other lines not here involved. After 1955 he devoted part of his time to the sale of the California company's products in his assigned territory.

Both the Memphis company and the California company manufacture vertical turbine pumps. The pumps are used principally for municipal water supply, for various industrial purposes not limited to the pumping of water, and for irrigation. Pumps are usually built to specification and cost from $1,000 to $100,000 each. Frequently, but not always, purchasers secure the advice of a consulting engineer before buying the pump.

Mahlon Layne, the inventor of the pump manufactured by both the Memphis and the California companies, and P. D. Bowler organized the predecessors of the Memphis and the California companies. Layne & Bowler Company, a Texas corporation, now Layne & Bowler, Incorporated (the Memphis company) was incorporated in 1907. Layne & Bowler Corporation, now Layne & Bowler Pump Company (the California company) was incorporated in 1912. By 1916 Layne had acquired a majority of the stock in both corporations. Joint ownership and control of the corporations continued until 1923 when Layne gave most of his stock in the Memphis corporation to his sons, thus ending the common ownership of the two corporations. In 1927, a controlling interest in the California corporation was given by Layne to the Layne Foundation, a philanthropic organization. The Layne Foundation in 1947 sold the controlling stock in the California corporation to individuals unrelated to the Layne family.

Plaintiff's cause of action is based upon unfair competition. Plaintiff claims to be entitled throughout the eight state area where it does business to the good will attaching to its corporate name and to the names "Layne", "Layne & Bowler" and "Lane & Bowler, Incorporated", which good will is alleged to have been created by the plaintiff since its organization in 1924, both by advertising and by doing business as a distributor of Layne pumps.

Plaintiff claims that defendant's sale of pumps under the name of Layne & Bowler Pump Company and the distribution of advertising literature using the names "Layne" and "Layne & Bowler" and the corporate name Layne & Bowler Pump Company, deceives plaintiff's customers and enables defendant to avail himself of plaintiff's good will, reputation and business.

While defendant admits that he has used the name Layne & Bowler Pump Company in soliciting sales of pumps for the California company, he denies that he has circulated any advertising literature or has otherwise used the names "Layne" and "Layne & Bowler" in connection with the sale of pumps except as part of his manufacturer's full corporate name or its trade-mark, Layne & Bowler Verti-Line pumps. Defendant also asserts as a defense that the California corporation was organized in 1912 and that it was engaged in the manufacture and selling of vertical turbine pumps long prior to the time when plaintiff was organized and commenced business.

No issue of patent or trade-mark infringement is presented by this case. The featured word in the Memphis company's trade-mark is the word "Layne". The featured word in the California company's trade-mark is the word "Verti-Line". The full corporate name and address of each company does appear upon the pumps it manufactures.

The right of both companies to use the Layne patents is unquestioned.

The primary question presented by this appeal is the right of defendant to use the corporate name of the California company in connection with the sale of its pumps in the eight state territory occupied by the plaintiff. It is undisputed that the plaintiff has established a profitable business which has a good reputation and an established good will in its eight state area. Plaintiff has at all times used the word "Layne" and at times the words "Layne & Bowler" as well as it own corporate name in connection with its extensive promotion, advertising and sale of the pumps of the Memphis company.

The California company has from its inception up to 1955 used the words "Layne & Bowler" as a trade-mark for its pumps and as a trade name for itself. In 1955 it registered the coined word "Verti-Line" as a trade-mark and since that time has called its products Verti-Line pumps or Layne & Bowler Verti-Line pumps. It has featured the trade-mark Verti-Line, which is set out in large letters. The Layne & Bowler name and the California company's address appear less prominently upon its pumps and in its advertising material.

Because of the rather complicated nature of the product and the necessity of making certain that the pump sold is suited for its intended purpose, most sales made by both parties to this action are made by personal contact with the potential users and frequently with their consulting engineers. The defendant has explained to the prospective purchasers and engineering firms interviewed the lack of any connection between the Memphis and the California companies. Plaintiff has made similar explanation to its customers. Both the Memphis and the California companies have also taken all reasonable steps to publicize the fact that they are separate corporations. The trial court expressly found [174 F. Supp. 626]: "There is no evidence of deliberate 'palming off', or any attempts in that direction; and no evidence of other deliberate unethical business practices."

Before passing to the merits of the case, we pause to consider defendant's contention that it is entitled to a dismissal upon the basis that plaintiff is not the real party in interest; that plaintiff has no proprietary interest in the Memphis company's trade-mark or trade name, and that consequently the Memphis company is an indispensable party. This issue was presented to the trial court by defendant's motion to dismiss. We believe that the trial court properly refused to dismiss the action upon this ground.

It must be conceded that plaintiff has not proved any ownership in the Memphis company's trade-mark or trade name. Plaintiff has only established a right derived from the Memphis company to use such names. The basis of the plaintiff's action is unfair competition, not for infringement of a trade-mark or trade name. In Shaver v. Heller & Merz Co., 8 Cir., 108 Fed. 821, at 826, this court specifically recognized that in an unfair competition case "no proprietary interest in the words, names, or means by which the fraud is perpetrated is requisite to maintain a suit to enjoin it. It is sufficient that the complainant is entitled to the custom—the good will—of a business, and that this good will is injured, or is about to be injured, by the palming off of the goods of another as his."

In G. H. Mumm Champagne v. Eastern Wine Corp., 2 Cir., 142 F.2d 499, at 502, the court held that a plaintiff who had exclusive sale rights to sell a French champagne, had sufficient interest to

bring an unfair competition action on its own behalf, the court stating:

"The French company is not an 'indispensable' party; the Delaware company speaks in its own interest, which is quite separate. It has a monopoly of the sale of Mumm's champagne in the eastern part of the United States, which substitutions of the defendant's wine will directly invade. Sales effected by such substitutions are sales of which it is deprived; and that is the only interest which ever, or substantially ever, supports such actions."

To the same effect, see Nims, Unfair Competition, (4th ed.) §§ 10 and 11.

We are satisfied that the plaintiff is entitled to bring this action to protect its own good will in its trade territory against unfair competition. The Memphis corporation is not an indispensable party to this action.

Although the absence of the California and Memphis companies as parties does not deprive the court of jurisdiction, the fact that they are not before the court must be given some consideration. In Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 411, 36 S.Ct. 357, 359, 60 L.Ed. 713, the court observed:

"In view of possible consequences to the rights of parties not before the court, it is desirable to limit the range of our decision as much as practicable, especially as the proofs now before us are incomplete and in some respects unsatisfactory."

We deem the foregoing admonition particularly applicable to the peculiar facts of this case.

The California corporation was created in 1912. Layne & Bowler has been a part of its corporate name ever since. Plaintiff did not come into existence until 1924. We find nothing in the record to indicate that either the Memphis company or the California company has challenged the right of the other to use its own corporate name. Each company has for years advertised its pumps in trade publications and national magazines, and has distributed catalogues and other literature. There is little, if anything, in the records to show the geographic trade area served by each company prior to the separation of common ownership in 1923. Additional evidence will be further discussed hereinafter.

The common-law remedy for relief from unfair competition has frequently been recognized and applied. The remedy is a flexible one. Courts have expanded its use to meet varying circumstances. While courts have not been in full agreement as to the maximum scope of the remedy, the law stated by the trial court, as follows:

"The right of a business to protect its reputation and good will from unfair competition in the community in which it lives by the competitive use of a confusingly similar name is an established principle of law." (174 F.Supp. 621, 626)

is well established by all authorities. The important words in the quotation just set out are the words "unfair competition."

An unfair competition action is a tort action. To recover, plaintiff must establish that the defendant has committed some wrongful act. The law does not prohibit competition—it protects against unfair competition. If the California company has the right in plaintiff's area to use its corporate name to identify it as the manufacturer of its pumps, then its use of such name under the circumstances of the present case cannot be considered unfair. The right of the California company to use the Layne & Bowler name in the western territory is conceded by the trial court, as evidenced by the following statement:

"Concededly, in its own trade territory, the Los Angeles corporation would have the right to use any of the words or names defendant is now using."

The court then goes on to say:

"Defendant, being subsequent in time in the territory mentioned,

[plaintiff's eight state territory] is not entitled to use these terms or names because to do so would cause its goods and products to be known in the market of those states as those of plaintiff."

The court appears to base the conclusion just stated largely upon the following reasoning:

"Here two companies once associated in a degree, agreed among themselves (with doubtful legality) on a voluntary division of territory. That division of territory was respected, and plaintiff acquired substantial rights in the protection of its business. Under those circumstances, when one company comes into the territory of the other and proceeds to compete with the other or with a company affiliated with it, we are justified in concluding that deception will be the probable result of defendant's act, and that is sufficient to establish a case of unfair competition. See Standard Oil Company of New Mexico v. Standard Oil Company of California, 10 Cir., 1932, 56 F.2d 973; Standard Oil Company of Maine v. Standard Oil Co. of New York, 1 Cir., 1930, 45 F.2d 309; Standard Oil Company v. Michie, D.C.E.D.Mo.1929, 34 F.2d 802."

From the foregoing quotations it would appear that the trial court at least placed considerable reliance upon the 1923 territorial agreement between the California and the Memphis companies in reaching its conclusion that plaintiff had prior rights to the Layne & Bowler name in its eight state territory.

The agreement limiting competition is not in evidence. The only information we have relating to it is found in that part of the stipulation of the parties reading:

"7. In 1923, Layne turned over 90% of his stock in Layne & Bowler Company (he owned all of that corporation's stock) to his three sons,

Lloyd, Leslie and Ollyn. Contracts entered into in August, 1923, between Layne, his three sons, Layne & Bowler Corporation and Layne & Bowler Company contained provisions which, among other things, allocated territory between the two corporations and provided for cross-licensing of existing and future patents held or obtained by any of the parties or their employees. The territory allocated to Layne & Bowler Corporation, of which Layne remained the principal owner, consisted of the six western states, California, Oregon, Washington, Nevada, Arizona and Utah. The remainder of the United States was allocated to Layne & Bowler Company. Prior to the 1923 agreements, Layne & Bowler Corporation had made some sales of vertical turbine pumps outside the territory assigned it by those agreements, including, in 1916, two sales in the State of Missouri and one sale in the State of Kansas and, in 1917, another sale in the State of Kansas."

"12. As a result of the contracts executed in August, 1923, with respect to cross-licensing of patents, division of territory, etc., the pump manufacturing business at Memphis and the pump manufacturing business at Los Angeles were bound not to compete, by being confined to their respective territories, and in general these agreements were observed until 1948. Although it was not clear from the agreements themselves that 1948 was to be their expiration date, the parties to the agreements thereafter treated them as having terminated at the end of a twenty-five year period."

It would appear from the stipulation as a whole that the territorial arrangement was effective only for a twenty-five year period terminating in 1948 and that neither the Memphis company nor the California company any longer considers itself bound by such agreement. There is evidence that each company is now

operating in territory allotted by agreement to the other company.

The interpretation of a contract presents a legal problem. Without the benefit of the text of the contract or a fair summary of all of its terms, we are not in a position to say that either company, by virtue of the territory agreement, has permanently lost or abandoned any territorial rights which it might have previously acquired.

 The court erred as a matter of law upon the record before us in basing any priority on the right to use the Layne & Bowler name in plaintiff's territory upon such agreement.

We shall now consider whether, aside from the territorial agreement, any sound factual basis exists for affirming the trial court's judgment.

 Many of the principles relating to the law of unfair competition are set out in Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713, and United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141. In the United Drug case, 248 U.S. at pages 97 and 98, 39 S.Ct. at page 50, the court states:

> "The law of trade-marks is but a part of the broader law of unfair competition; the right to a particular mark grows out of its use, not its mere adoption; its function is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his; and it is not the subject of property except in connection with an existing business. * * *
>
> "* * * * And the expression, sometimes met with, that a trademark right is not limited in its enjoyment by territorial bounds, is true only in the sense that wherever the trade goes, attended by the use of the mark, the right of the trader to be protected against the sale by others of their wares in the place of his wares will be sustained."

 In the two cases last cited, the Supreme Court found that the trade of the first user of the name or mark had not extended to the territory as to which the injunction was sought, and that an innocent party, without knowledge of prior use of the marks, had adopted identical marks in good faith and developed good will based thereon. The right of the innocent user and developer of the mark in a remote territory not occupied by the creator of the mark was protected in the territory which he first occupied and developed. Nims, Unfair Competition & Trade-Marks (4th ed.) at § 218b, discusses the Supreme Court cases just cited and states, at page 646, "The Hanover and Rectanus decisions held no more than that the prior user of a trade-mark may not interfere with its use in separate and remote territory by one who appropriated it in good faith without knowledge of its earlier use." Such appears to be a proper analysis of the cases.

In Dawn Donut Co. v. Hart's Food Stores, Inc., 2 Cir., 267 F.2d 358, the court interprets the Hanover and Rectanus decisions as holding that the first party to adopt a trade name in an area without knowledge of its prior registration or use can gain a right to exploit the mark exclusively in that market. The court then goes on to hold that the Lanham Act affords constructive notice of the registration of the mark and that by reason thereof the subsequent user of the mark cannot establish that he adopted the mark in good faith. The case just discussed is not directly applicable in our present case, as we are here concerned with a trade name, not a registered trade-mark. However, actual notice in a trade name situation would serve the same purpose as constructive notice in the trade-mark situation.

A careful examination of the record in this case reveals that there is undisputed although incomplete evidence as to sales made by the California company in Missouri and Kansas in 1916 and 1917. Whether any other sales were made in

any of the plaintiff's trade territory before or since does not affirmatively appear. The stipulation on its face does not purport to cover all sales made in the territory claimed by plaintiff. The stipulation merely states that the recited sales were included in the sales made by the California company in such territory.

Plaintiff on its letterheads from the time of its origin to 1951 included the following:

"Factories
Memphis, Tenn.
Houston, Texas
Los Angeles, Cal.
Branches and Representatives
Throughout the Country."

Plaintiff does not seriously contradict defendant's claim that the reference to the Los Angeles factory on the letterhead is a reference to the California company. The Memphis company has never had a factory in California. A logical and seemingly inescapable inference must be drawn from plaintiff's listing the Los Angeles factory on its letterhead that plaintiff had full knowledge of the Los Angeles factory as a manufacturer of Layne & Bowler pumps.

We are convinced that the plaintiff has not established within the meaning of the Hanover and Rectanus cases that the plaintiff was without knowledge of the prior use of the Layne & Bowler name by the California company at the time it developed such name in its trade territory, and that plaintiff did not qualify as an innocent user and developer of the name. While the trial court by way of conclusion states that the plaintiff was the first to occupy its territory, the court's opinion which constitutes the trial court's findings of fact and conclusions of law, does not reflect that the court gave consideration to the substantial evidence of prior use of the Layne & Bowler name by the California company. Obviously plaintiff entered and developed its trade territory long before the defendant Fry entered the field. However, if the California company has a right to use its name in the disputed territory equal or superior to that of the plaintiff, defendant as its representative would have a similar right.

Plaintiff in this action bases its rights only upon its own development of good will in its territory. No basis for any derivative rights based upon any possible superior right that the Memphis company might have over the California company is pleaded or proven. We cannot say upon the present record that there is any real conflict between the Memphis company and the California company as to the right to use the Layne & Bowler name upon a national basis.

We have been unable to find any case factually approaching our present case. The trial court cited and relied upon various Standard Oil cases, which are set out in the quotation from the trial court's opinion herein above. The closest case is Esso, Inc. v. Standard Oil Co., 8 Cir., 98 F.2d 1. Our holding that Esso was properly enjoined from using the name "Esso" in the territory of the Standard Oil Company of Indiana appears to be based largely upon the following statement:

"[W]hen these companies were operating prior to the decree of dissolution, they were operating in different territories and had their own good will built up from such operation. Thus, in the decision of the Supreme Court in Standard Oil Company of New Jersey v. United States, 221 U.S. 1, at page 77, 31 S.Ct. 502, at page 522, 55 L.Ed. 619, 34 L.R.A.,N.S., 834, Ann.Cas.1912D, 734, we find it said that, ' * * * the country was divided into districts and the trade in each district in oil was turned over to a designated corporation within the combination, and all others were excluded * * *.' There was no right of good will established in this territory by the New Jersey Company. There was no good will owned in common, but a separate good will appertaining to the separate business as carried on by the various com-

panies in their allotted territory."
98 F.2d 1, 7.

An important factual distinction between the Esso case and our present case is that in Esso the court found that, as part of the Standard Oil plan of operation, provision was made that the territory in dispute had been allocated to Standard Oil Co. of Indiana and that all other corporations formerly related were excluded from operating in the territory. Such territorial determinations were undoubtedly intended to be permanent. In contrast, in our present case the territorial restrictive agreement was to be effective for a limited time only. In Esso there is also the finding, doubtless based on substantial evidence that no right of good will had been established in the disputed territory by Esso. In our present case there is undisputed evidence of prior sales by the California company in the disputed territory.

The other Standard Oil cases cited are all clearly distinguishable. In each of such cases, a newcomer invading the territory was enjoined from competing unfairly. Plaintiff in each instance was the first to use the name in controversy in the territory in dispute, and the newcomer was seeking to profit by plaintiff's established good will.

Upon the basis of the law heretofore stated, and the evidence before us, we hold that the trial court committed an error of law in determining that the territorial agreement effective for a limited period in any way detracted from any right the California company or the defendant as its representative had previously acquired to use its corporate name in plaintiff's territory to describe it as the manufacturer of Verti-Line pumps; that a finding that plaintiff's rights in its eight state territory to use the Layne & Bowler name are superior to the right of the California company to use such name is not supported by substantial evidence; and that plaintiff is not an innocent user of the Layne & Bowler name in its territory within the meaning of the Hanover and Rectanus decisions. We completely agree with the trial court's determination that the defendant and the California company did all that they reasonably could to avoid confusion in names. Substantial evidence is wholly wanting to support any conclusion that the defendant committed any unfair, illegal, or wrongful act. The court therefore erred in granting the injunction.

Defendant has made a strong argument in support of his contention that the trial court's finding of likelihood of confusion is not supported by substantial evidence. Since we have determined that defendant has committed no unfair or unlawful act in using his manufacturer's name as he did, we do not reach or decide defendant's contention upon this issue.

The judgment is reversed and the injunction issued is vacated and set aside.