**OHIO HOIST MANUFACTURING CO.,**
Plaintiff-Appellant,

v.

**Vincent LiROCCHI, d/b/a Cable Climber Sales Co., et al., Defendants-**
Appellees.

No. 73-1212.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 9, 1973.

Decided Jan. 3, 1974.

Sidney B. Jacoby, Shaker Heights, Ohio, for plaintiff-appellant.

John M. Glenn, Buckingham, Doolittle & Burroughs, Akron, Ohio, for defendants-appellees.

Before PHILLIPS, Chief Judge, and CELEBREZZE and MILLER, Circuit Judges.

PHILLIPS, Chief Judge.

This is an appeal from an order of the District Court dismissing for lack of subject matter jurisdiction appellant's damage action based on the theory of abuse of process.

Appellee LiRocchi obtained a money judgment against appellant in the United States District Court for the Central District of California. It is averred that execution of that judgment was stayed after appellant filed a motion for a new trial, but that, nevertheless, appellees presented to the United States District Court for the Northern District of Ohio for registration a document obtained from the California District Court entitled "Certification of Judgment for Registration in Another District" without revealing that execution of the California judgment had been stayed pending the motion for a new trial. The Ohio District Court subsequently issued a writ to appellees whereby execution was levied upon a bank account and other properties of appellant located in Ohio.

Appellant then instituted the instant abuse of process action with jurisdiction alleged on the basis of diversity of citizenship. 28 U.S.C. § 1332(a). The District Judge ruled that there was not complete diversity among all the parties inasmuch as appellant was a corporate citizen of Ohio and one party defendant, namely Lombardi, was also a citizen of Ohio. The District Judge consequently granted appellant leave to show cause why its complaint should not be dismissed for lack of jurisdiction.

Thereafter appellant abandoned its allegation that jurisdiction was predicated on diversity of citizenship and instead asserted jurisdiction on the basis that a federal question existed. 28 U.S.C. § 1331(a). The specific federal question alleged was a purported violation by appellees of 28 U.S.C. § 1963, which provides in pertinent part as follows:

"A judgment in an action for the recovery of money or property now or hereafter entered in any district court which has become final by appeal or expiration of time for appeal may be registered in any other district by filing therein a certified copy of such judgment."

The District Court, however, dismissed the case, finding that this alleged claim was "so insubstantial that subject matter jurisdiction is not present."

Appellant contends that appellees' violation of 28 U.S.C. § 1963 gave rise to a civil remedy under that statute. Although there is no express language in the statute conferring such a remedy, appellant asserts that a breach of a statutory duty gives rise to a private right

of action on behalf of the injured person for whose benefit the statute was passed. Allen v. State Board of Elections, 393 U.S. 544, 557, 89 S.Ct. 817, 22 L.Ed. 2d 1 (1969). Further, in Stanford v. Utley, 341 F.2d 265 (8th Cir. 1965), then Circuit Judge Harry A. Blackmun, in holding that timely registration opens the way to enforcement procedure in the registration court, concluded that "§ 1963 is more than 'ministerial' and is more than a mere procedural device for the collection of the foreign judgment." 341 F.2d at 268.

A brief summary of the legislative history of § 1963 is made an appendix to this opinion.

This statute has been held to have been adopted to protect both judgment creditors and judgment debtors from the additional cost and harassment of further litigation which otherwise would be incident to an action on the judgment in a foreign district. See, Stanford v. Utley, *supra,* 341 F.2d at 270, and authorities cited therein. One means of reducing the cost and harassment of further litigation is to permit the judgment creditor to enforce his registered judgment. In Gullet v. Gullet, 188 F.2d 719, 720 (5th Cir. 1951), the court held that the registration in a Florida District Court of a judgment of the District Court of the District of Columbia, pursuant to 28 U.S.C. § 1963, "has the same effect as a judgment of the Florida district court" and therefore "the judgment creditor is entitled to proceed by garnishment to enforce payment."

■ Under these authorities, the California judgment, once registered in the Northern District of Ohio, had the same effect as a judgment of the Northern District of Ohio. The United States District Court for the Northern District of Ohio has jurisdiction to enforce the judgment, and, as the record here indicates, has taken steps to do so.

The registration in Ohio of the judgment obtained in the California District Court was, in truth, according to the allegations of the amended complaint, an egregious violation of the terms of the statute. Not only had a motion for a new trial been filed in the California District Court after the judgment was rendered, but, in addition, the enforcement of the judgment had actually been stayed by the California court. These facts, as the amended complaint alleged, were known by the defendants-appellees at the time they accomplished the registration of the judgment in the Ohio District Court. The amended complaint further alleges that execution was issued on the registered judgment and that a levy was made upon certain bank accounts and properties of the plaintiff-appellant in Lisbon, Ohio, "seriously interfering with the conduct of plaintiff's business." The judgment was registered in the Ohio court as "Civil Action No. C 71–761." The amended complaint prays not only for money damages, but also that the registration of the said judgment in the Ohio court "be quashed and expunged from the records of this court."

Although the District Court by its order of October 4, 1972, after a pre-trial conference, vacated the judgment registered in case No. C 71–761, as requested by the plaintiff-appellant, it nevertheless dismissed the amended complaint by its order of December 22, 1972, upon the ground that a civil remedy could not be inferred from a violation of the registration statute (§ 1963). The dismissal, as stated, was "for want of subject matter jurisdiction."

■ While we decline to reach the question of whether a violation of § 1963 gives rise to a civil remedy for damages, it seems clear that the registering court has authority, necessarily implied from § 1963 and as a matter of inherent jurisdiction, where a foreign judgment has been registered in knowing violation of the terms of the registration statute, to grant relief (a) by annulling or vacating the registered judgment (as the court below has actually done); (b) by vacating any process or executions which may have issued upon the registered judgment; and (c) by restoring to the aggrieved parties any assets or prop-

erties which may have been seized or levied upon. These appear to be the minimum steps which a District Court could take to remedy a fraud which had been practiced upon it, and also to remedy a violation of the registration statute itself. · Moreover, since it necessarily has implied federal authority to accomplish these results, the registering court also would have pendent jurisdiction of a non-federal claim for abuse of process where the aggrieved party has suffered damage or loss as a result of the wrongful registration. United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933).

In *Hurn* it was held that state law claims are appropriate for federal court determination if they form a separate but parallel ground for relief also sought in a substantial claim based on federal law. In the *Gibbs* case the Supreme Court stated that "if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." 383 U.S. at 725, 86 S.Ct. at 1138.

It is true that the Court pointed out in *Gibbs* that the justification for applying the doctrine of pendent jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants . . . ." 383 U.S. at 726, 86 S.Ct. at 1139.

■ Applying these principles to the present case, we are of the opinion that the jurisdiction of the registering court under § 1963 to take the remedial steps indicated above, where a foreign judgment has been registered in clear violation of the statute, presents a substantial federal question which it has the power to decide along with a closely related non-federal claim. It is clear to us that while the pendent jurisdiction doctrine may ultimately rest upon the exercise of discretion, the considerations of judicial economy, convenience and fairness to litigants referred to in *Gibbs*, dictate that the district court in the exercise of a sound judicial discretion should, on the facts presented here, entertain both the federal and non-federal claims.

It follows that the district court should proceed to adjudicate the appellant's non-federal claims for damages proximately resulting from the wrongfully entered judgment.

The District Court's dismissal of the appellant's action for want of subject matter jurisdiction is reversed and the case is remanded for disposition of appellant's claim on its merits.

In view of the foregoing disposition of this appeal, we need not reach the issue of whether appellant should be permitted under 28 U.S.C. § 1653 to amend its complaint to strike the non-diverse defendant as a party and thus proceed on the jurisdictional basis of diversity of citizenship.

Reversed and remanded.

## APPENDIX

Section 1963 follows the recommendations of the Supreme Court's Advisory Committee on Fed.R.Civ.P. (1937). The Committee proposed Rule 77, "Registration of Judgments in Other District Courts," but the rule was never promulgated by the Supreme Court as a rule of procedure. Instead Congress enacted § 1963, which contained language similar to that in proposed Rule 77, as a part of the Judicial Code of 1948.

Except for a statement by Professor James William Moore of Yale Law School, there is no legislative history specifically on § 1963. On March 7, 1947, Professor Moore made the following statement before a subcommittee of the Committee on the Judiciary of the House of Representatives:

"§ 1963 provides for the registration of Federal judgments for the recovery of money or property in any

other Federal district court. Provision for the registration of judgments in other courts is possible in some 46 British jurisdictions, and has been supported as to all judgments, State as well as Federal, by the American Bar Association, which has advocated congressional legislation in this matter since 1927.

"The Supreme Court's advisory committee recommended a rule for the recognition of Federal judgments in 1937, but the Supreme Court did not promulgate the rule. While this may or may not be within the competence of the rule-making power, it is certainly within the competence of Congress at this time to provide for the registration of Federal judgments." Hearings on H.B. 3214 Before a Subcommittee of the House Committee on the Judiciary, 80th Cong., 1st Sess., ser. 2, at 28 (1947).

The following is the text of proposed Rule 77 as contained in the final report of the Advisory Committee to the Supreme Court:

"Rule 77. Registration of Judgments in other District Courts. A judgment entered in any district court and which has become final through expiration of the time for appeal or by mandate on appeal may be registered in any other district court by filing therein an authenticated copy of the judgment. When so registered the judgment shall have the same effect and like proceedings for its enforcement may be taken thereon in the court in which it is registered as if the judgment had been originally entered by that court. If in the court in which the judgment was originally entered, the judgment has been satisfied in whole or in part or if an order has been made modifying or vacating it or affecting or suspending its operation, the party procuring the registration shall and any other party may file authenticated copies of the satisfaction or order with the court in which the judgment is registered. This rule shall not be construed to limit the ef-

fect of the Act of February 20, 1905, c. 592, § 20 (33 Stat. 729), as amended, U.S.C., Title 15, § 100; or the Act of March 4, 1909, c. 320, §§ 36 and 37 (35 Stat. 1084), U.S.C., Title 17, §§ 36 and 37; or § 56 of the Judicial Code, U.S.C., Title 28, § 117; or to authorize the registration elsewhere of an order or a judgment rendered in a divorce action in the District of Columbia."

The note of the Advisory Committee on proposed Rule 77 was as follows:

"Compare the provisions of U.S.C., Title 28, § 252 (Judgments for set-off or counterclaims) for the registration of judgments of the Court of Claims in favor of the United States. 'Any transcript of such judgment, filed in the clerk's office of any district court, shall be entered upon the records thereof, and shall thereby become and be a judgment of such court and be enforced as other judgments in such court are enforced.'

"Provision for the registration of judgments in other courts is possible in some 46 British jurisdictions; and has been supported as to all judgments, state as well as federal, by the American Bar Association, which has advocated congressional legislation in this matter since 1927. See 52 A.B. A.Rep. 77–85, 292–310 (1927), and draft of an act at page 319; W. W. Cook, The Powers of Congress Under the Full Faith and Credit Clause (1919), 28 Yale L.J. 421–449; Yntema, The Enforcement of Foreign Judgments in Anglo-American Law (1935), 33 Mich.L.Rev. 1128, 1150 et seq.; G. W. C. Ross, Full Faith and Credit in a Federal System (1936), 20 Minn.L.Rev. 140–190."

The Supreme Court did not disclose why it did not adopt proposed Rule 77, but it has been suggested that the reason was apprehension that the rule might have affected substantive rights. See 2 Moore's Federal Practice para. 1.-04[2]; 1 Barron & Holtzoff, Federal Practice and Procedure (Wright Revision), § 5, pp. 20–21.

CELEBREZZE, Circuit Judge (dissenting).

I agree with my brethren that if Appellant can sustain its allegations, it deserves a forum in which to vindicate its interests. I disagree with the majority over its means of accomplishing this. Because I believe that Appellant raises neither a substantial federal question nor a properly pendent state claim, I would allow it to amend its complaint to provide diversity jurisdiction, by striking the non-diverse party, or would remit Appellant to its remedies in Ohio state courts.

The majority seeks to avoid the basic issue raised on this appeal by remitting the case to the District Court as a pendent state law claim. The issue of pendent jurisdiction was not considered by the District Court, nor did Appellant request such action, nor have Appellees had an opportunity to argue against its application. The only issue raised before this Court on appeal is whether an abuse of the 28 U.S.C. § 1963 process for registering foreign federal court judgments gives rise to an independent federal private remedy. If it does, the District Court should apply federal common law to decide the issue under federal question jurisdiction. If it does not and if the District Court has diversity or pendent jurisdiction over the tort claim, the District Court must apply Ohio law. Thus, not only has the majority reached an improper result, in my opinion, but it has given the least possible aid to the District Court in deciding what law should apply.

The majority asserts that the Ohio District Court which registered the California judgment "has authority, necessarily implied from § 1963 and as a matter of inherent jurisdiction" to annul the registered judgment, vacate executions issued on the judgment, and restore assets seized under the judgment to aggrieved parties. I read no such implication from § 1963. The remedy for an improperly obtained judgment is provided under Rule 60(b) of the Federal Rules of Civil Procedure. Rule 60(b) authorizes a court to vacate a judgment obtained by fraud or misrepresentation "upon such terms as are just."

The District Court promptly vacated the improperly registered judgment on Appellant's oral motion. Appellant now seeks a damage award, since Appellees "have caused Plaintiff Corporation to be damaged by disruption of its normal business, and specially damaged by loss of business reputation in the community, loss of customers, credit standing, profit and income, and the rendering ineffective the nationwide advertising and sales effort of a sensitive product, to its actual damages in the sum of $1,000,000.-00." Amended Complaint, filed May 16, 1972, para. X. Appellants consistently informed the District Court, as they now tell us, that they do not seek a mere vacation of the judgment, with collateral matters restored as proper. They want relief under a specific tort claim, with damages set at $2,000,000, when punitive damages are included.

The majority remands to the District Court by arguing that "[S]ince it necessarily has implied federal authority [to vacate the judgment, etc.], the registering court also would have pendent jurisdiction of a non-federal claim for abuse of process where the aggrieved party has suffered damage or loss as a result of the wrongful registration." It then proceeds to hold that "[T]he case is remanded for disposition of appellant's claim on its merits." It arrives at this conclusion without consideration of the factors which are significant in deciding whether pendent jurisdiction should be exercised.

Its conclusion is unwarranted for four reasons. First, the majority *mandates* the exercise of pendent jurisdiction in disregard of the rule that district courts have discretion over whether to hear pendent claims. Second, the holding flies in the face of the Supreme Court's teachings on federal-state relations. Third, it has no basis in the *raison d'etre* of pendent jurisdiction—judicial economy. Fourth, the holding is contrary to the spirit of 28 U.S.C. § 1963,

which is the sole basis for the federal court's initial involvement in these proceedings.

It is a basic rule of judicial administration that a District Court must have broad discretion to decide whether to entertain state law claims that parties seek to attach to federal causes of action. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); A. H. Emery Co. v. Marcan Products Corp., 389 F.2d 11, 20 (2d Cir. 1968), cert. denied, 393 U.S. 835, 89 S. Ct. 109, 21 L.Ed.2d 106; Patrum v. Martin, 292 F.Supp. 370, 371 (W.D.Ky. 1968); Edward J. Moriarty & Co. v. General Tire & Rubber Co., 289 F.Supp. 381, 386 (S.D.Ohio 1967). The existence of pendent jurisdiction does not require its exercise.[1] District courts must have an opportunity to consider the competing interests in deciding whether to exercise their pendent jurisdiction.[2] Yet, the majority deprives the District Court of its discretion, without itself considering the factors the Supreme Court has instructed courts to ponder carefully before entertaining a pendent state claim.

In reviewing whether the District Court in this case should exercise its discretion to entertain Appellant's tort claim, I am convinced that it should not. The second reason for my disagreement with the majority thus stems from the consideration of federal-state relations that the Supreme Court expressed in *Gibbs*:

Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.

. . . . [I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals. 383 U.S. at 726-727, 86 S.Ct. at 1139.

Unless the majority considers Appellant's tort claim to be a matter of federal law, it is obvious that the *state* claim predominates in this case. In terms of proof, the state abuse of process claim will require volumes of evidence as to Appellees' *scienter* (unless a negligence claim is also brought), the extent of Appellant's injury, specific items of alleged damage, and other matters. The proof required to vacate the registered judgment on the other hand, was a mere showing that the California Court had stayed its judgment before Appellees registered it in Ohio. State law predominates also as to "the scope of the issues raised." The state tort claim involves issues of state law which may be novel and complex, whereas the vacation of the Ohio judgment depended simply on the proof that it had been obtained after the California judgment had been stayed. The "comprehensiveness of the remedy sought," furthermore, is clearly greater as to the state tort claim than the federal claim that the Ohio judgment should be vacated.

Considering these factors, I fail to comprehend how the majority comes to its result. "Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed." *Gibbs*, 383 U.S. at 727, 86 S.Ct. at 1140.[3]

1. "It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." Gibbs, 383 U. S. at 726, 86 S.Ct. at 1139. See C. Wright & A. Miller, Federal Practice and Procedure, § 1588, Vol. 5, 813 (1971).

2. See Baker, "Toward a Relaxed View of Federal Ancillary and Pendent Jurisdiction," 33 U.Pitt.L.Rev. 759 (1972); Wright & Miller, § 1588, 810-11, 813.

3. See Hart and Wechsler's The Federal Courts and the Federal System, 925 (2d ed. 1973). Concerning the dangers of a loose and unthinking exercise of pendent jurisdiction by the federal courts, see Shakman, "The New Pendent Jurisdiction of the Federal Courts," 20 Stan.L.Rev. 262 (1968).

As a third reason for dissenting, I conclude that the interest in judicial economy, which provides the basic justification for the exercise of pendent jurisdiction,[4] would not be served by directing the District Court to entertain the state tort claim. As the *Gibbs* Court stated:

> Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. 383 U.S. at 726, 86 S.Ct. at 1139.

Here the federal claim was disposed of long ago, so that the state claim would require a wholly independent proceeding. Thus, there is absolutely no interest in consolidating federal and state claims at this point, since only a state claim remains.[5]

Fourth, in attaching a state tort claim to a motion to vacate a 28 U.S.C. § 1963 registration, the majority expands the workload of the federal courts, whereas congressional intent in enacting § 1963 was to do precisely the opposite. The § 1963 procedure was deliberately designed to allow a simplified registration process for foreign judgments, so as to end the litigation of questions as to whether the original federal court foreign judgment was proper in various respects. Directing the appendage of a state tort claim to the simple procedure in § 1963 and its vacation under Rule 60(b) is contrary to the spirit of that section.

For these four reasons I conclude that it is improper to divest the District Court of its discretion to decide whether to exercise its pendent jurisdiction over Appellant's state claim in that it is highly doubtful that the District Court would exercise such discretion in Appel-

lant's favor. The majority's sympathies for Appellant's allegations and condemnation of Appellees' misuse of the federal courts ignore the need for district court discretion over the exercise of pendent jurisdiction. I too am sympathetic to Appellant's allegations. But I am also mindful of the other demands on the federal district courts.[6] Thus, Appellant should bring his abuse of process claim against the named Appellees in an Ohio state court—unless § 1963 itself authorizes a federal private cause of action on Appellant's behalf. This is the question which Appellant asked us to decide. Because of my conclusion against the mandatory exercise of pendent jurisdiction, I cannot forestall this issue if Appellant is to be remitted to state courts.

Appellant urges that a federal private remedy should be inferred from § 1963 on behalf of persons aggrieved by the misuse of its registration procedures. Appellant argues that § 1963 protects the class of foreign judgment debtors and that from this we should infer that Congress intended the federal courts to entertain tort claims to protect debtors aggrieved by the misuse of § 1963. This argument is at odds with the case law on the implication of federal causes of action from facially silent statutes.

Only when a statute imposes a duty or prohibition and when the violation of that command injures a person in the enjoyment of a right Congress sought to protect in passing the statute will the federal courts draw the inference that Congress intended the federal courts to afford a private remedy to the aggrieved person. J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Allen v. State Board of Elections, 393 U.S. 544, 557, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969); Fullerton v. Monon-

---

4. "[P]endent jurisdiction['s] . . . justification lies in considerations of judicial economy, convenience and fairness to litigants." 383 U.S. at 726, 86 S.Ct. at 1139.

5. "[C]ourts will refuse to adjudicate the pendent claim when the federal claim is dismissed prior to trial . . . or when it is mooted or abandoned or whenever reten-

tion of the state claim does not substantially increase the probability of a speedier and fairer adjudication of the controversy." Wright and Miller, § 1588, 814–15.

6. See Justice Black's dissent in Bivens v. Six Unknown Named Agents on Federal Bureau of Narcotics, 403 U.S. 388, 429, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

gahela Connecting R. Co., 242 F.Supp. 622, 624 (W.D.Pa.1965).

I can find no congressional command or prohibition expressly stated in § 1963, which distinguishes this case from those which have implied private remedies from federal statutes. Section 1963 permits a judgment creditor to register a foreign judgment simply and efficiently in a federal court. While a registering creditor must follow the § 1963 procedures to make the registered judgment valid in a second state, I fail to see from the language of the section or from any legislative history that Congress thereby intended to protect judgment debtors in the enjoyment of the right to be free from personal injury caused by a misuse of its procedures *as a matter of federal law*. What Appellant is really arguing is that a federal court should provide an abuse of process remedy for persons aggrieved when other parties misuse the federal courts. Congress has not seen fit to federalize the tort of abuse of the federal judicial process. The federal courts, of course, have inherent power to vindicate their own interests through their contempt powers. But they have no right to afford private parties a remedy for the misuse of their processes, in the absence of congressional authorization. The lower federal courts have only such jurisdiction as Congress has granted. I find no federal cause of action exists for the abuse of § 1963 procedures. In the absence of a federal remedy, Appellants are remitted to the state courts for vindication of their rights, as is the constitutional custom under our system of government.

Having found no justification for returning the case to the District Court on the basis of pendent or federal question jurisdiction, I turn finally to Appellant's alternative request. Appellant asks that it be permitted to amend its complaint to show diversity jurisdiction, by striking Appellee Lombardi, a non-diverse party. Under 28 U.S.C. § 1653, this Court has discretion, in proper cases, to allow a party to amend its complaint so as to establish federal jurisdiction. By striking Appellee Lombardi from its complaint, Appellant could accomplish this. "An application under § 1653 is . . . to be construed liberally to permit the action to be maintained if at all possible to determine from the record that jurisdiction does in fact exist." John Birch Society v. National Broadcasting Company, 377 F.2d 194, 199 (2d Cir. 1967). Although Appellants have been allowed to amend their pleadings twice already by the District Court, their failure to sustain jurisdiction under their present complaint is due to their attempt to imply a federal cause of action from 28 U.S.C. § 1963 in order to sustain federal question jurisdiction against all three Appellees. Thus, cases refusing permission to amend are not on point, since they center on a party's refusal or failure to amend its complaint after a district court has given it the opportunity to do so. *See* Sharp v. Barnhart, 117 F.2d 604 (7th Cir. 1941), cert. denied, 313 U.S. 576, 61 S.Ct. 1099, 85 L.Ed. 1533 (where "good faith on the part of the moving parties is lacking," 117 F.2d at 607); Joy v. Hague, 175 F.2d 395 (1st Cir. 1949) (where the parties "refused to amend as the District Court invited them to do," 175 F.2d at 396); and Harris v. American Legion, 261 F.2d 594 (7th Cir. 1958) (where the parties "fail[ed] to submit evidence establishing such diversity at the separate trial on that issue, although given ample opportunity to do so," 162 F.Supp. 700, 712 (S.D.Ind.1958).) Under § 1653, I would allow Appellants to strike Appellee Lombardi and return the case to the District Court under diversity of citizenship jurisdiction. *See* Fry v. Layne-Western Company, 282 F.2d 97, 99 (8th Cir. 1960); Keene Lumber Co. v. Leventhal, 165 F.2d 815, 818, n. 1 (1st Cir. 1948).